**RAILROAD COMMISSION OF TEXAS, Appellant,**

v.

**Kelly McKNIGHT, d/b/a Kelly McKnight Wrecker Service, et al., Appellees.**

**No. 1419.**

Court of Civil Appeals of Texas, Tyler.

June 18, 1981.

R. Lambeth Townsend, Asst. Atty. Gen., Austin, for appellant.

Thomas F. Sedberry, Lanham, Hatchell, Sedberry & Hoffman, Austin, for appellees.

SUMMERS, Chief Justice.

This is an appeal from a judgment of the district court setting aside a final order of the Texas Railroad Commission issued on February 26, 1979, which approved the transfer and sale of Specialized Motor Carrier Certificate No. 19552 from Johnny Cabluck, d/b/a Roosevelt Service to Jordan Vestal Ashford, d/b/a Joe Ashford Wrecker Service. Appellees here, competing specialized motor carriers who also hold motor carrier certificates, filed suit in the district court of Travis County seeking to set aside that order partly on the grounds that the certificate sought to be transferred had been canceled by the Commission in 1964 and had been improperly reinstated by the Commission fourteen years later. Since the certificate was incorrectly reinstated, they alleged, the certificate remained in a canceled condition and could not be transferred. The district court rendered judgment for appellee McKnight, et al. We affirm that judgment.

On October 23, 1961, Johnny Cabluck, d/b/a Roosevelt Service was issued a Specialized Motor Carrier Certificate of Convenience and Necessity No. 19552 allowing him to transport wrecked or disabled motor vehicles and trailers in wrecker service between all points in Texas on and north of U.S. Hwy. 90 from El Paso to Sealy, on and north of State Hwy. 36 from Sealy to Rosenberg, on and north of U.S. Hwy. 90A from Rosenberg to Sugarland, and on and north of State Hwy. 6 from Sugarland to Galveston, but prohibiting him from handling movement either into or out of Bexar County, Texas. This certificate was amended in January of 1963 to include additional service areas within the state. In July of 1963, Cabluck remitted to the Commission the requisite fees, proofs of insurance and reports necessary to obtain cab cards and plates for his vehicles so that they could operate legally for an additional fiscal year. By letter dated July 17, 1963, Mr. Horace Soule, Director of the Transportation Division of the Commission, advised Mr. Cabluck that due to a recent amendment to the statute, art. 911b, § 1¼ (House Bill 62)[1], he could legally operate without the certificate and suggested that he request that it be canceled.

On July 24, 1963, Mr. Cabluck wrote the director stating his opinion that the statute did require certification of his service and he wished to keep the certificate. He received no reply. Cabluck persisted and was ultimately able to obtain cab cards and plates for the year 1963.

The following year Mr. Cabluck did not tender his fees and reports. After the appropriate notice was given, on November 9, 1964, the Motor Transport Division held a public hearing concerning cancellation of a number of certificates, including Mr. Cabluck's, for failure to comply with the requirements of the motor carrier law by paying plate and tax fees and/or register-

---

1. Wrecker type vehicles

Sec. 1¼. The term "Specialized Motor Carrier" and "Specialized Equipment" shall not include wrecker type vehicles used incidental to or as an adjunct to the carrying on of the primary business of buying, selling, exchanging, repairing, storing, servicing or wrecking motor vehicles.

All statutory references are to Tex.Rev.Civ. Stat.Ann. (Vernon 1964) unless otherwise noted.

ing equipment with the commission for the fiscal year ending August 31, 1965. Thereafter, on November 19, 1964, the Commission issued its order canceling Cabluck's certificate. The authority remained in a canceled condition, Cabluck continuing to operate his wrecker service and maintaining the requisite insurance, until thirteen years later in April of 1978 when Cabluck sought reinstatement of his original certificate. He set forth as grounds therefor his reliance upon director Soule's aforementioned letter. By order dated July 3, 1978, the Commission reinstated the original certificate stating therein that "... the previous Order canceling this certificate or permit is vacated, and the certificate or permit is fully reinstated." Neither the order canceling the certificate nor the reinstatement order was appealed.

Precisely thirty days after Cabluck's certificate was reinstated he filed an application with the Commission seeking approval to sell and transfer the authority to Ashford. A hearing on the transfer application was scheduled for October 20, 1978. Two days before the hearing, appellees herein filed a complaint before the commission complaining of reinstatement of Cabluck's authority and protesting Cabluck's application for sale and transfer. Appellees' protest to reinstatement of the application was consolidated with the hearing on the transfer application.

Following the scheduled hearing, the hearing examiner issued a proposal for decision on January 5, 1979, recommending approval of the sale and transfer to Ashford and dismissal of appellees' complaint. Exceptions were filed to the proposed decision, replies made thereto and a final order adopting the examiner's proposal and granting the transfer and sale was issued by the Commission on February 26, 1979. The protestants and intervenors filed a motion for rehearing which was overruled on April 2, 1979. Appeal was then perfected by appellees to the district court of Travis County under art. 911b, § 20.

The district court rendered judgment for the protestants, appellees herein, setting aside the Commission's order granting the transfer and sale of Certificate No. 19552 as well as the July 3, 1978, order granting reinstatement of the certificate. The court filed findings of fact and conclusions of law, a number of which are attacked by appellant. Specifically, in conclusions of law numbers 7–13 the court concluded that:

(7) The Commission erred in reinstating Specialized Motor Carrier Certificate No. 19552, as there is no provision in Article 911b, V.A.C.S., permitting *such* reinstatement and transfer. (Emphasis supplied.)

(8) The Commission erred in reinstating Certificate No. 19552 as there is no existing rule or regulation permitting *such* reinstatement and transfer. (Emphasis supplied.)

(9) The Commission, by granting the reinstatement of the certificate and the subsequent transfer of the authority, ignored its own rules of practice providing specified time periods within which to seek a reinstatement of operating rights.

(10) There were in existence at the time of the cancellation of Roosevelt's authority in 1964, as well as at the time of the reinstatement of the authority in 1978, rules and regulations of the Commission providing for specified procedures for the reinstatement of cancelled motor carrier authorities. More particularly, present Regulation No. 051.03.09.004, as well as Regulation Nos. 051.03.12.008 and 051.03.05.004, provide for the request for reinstatement to be filed within 45 days of the final order of the Commission cancelling the motor carrier authority. Similar regulations were in effect in 1964–65. The Commission erred in finding and concluding that the cancellation of Certificate No. 19552 in 1964 was not performed pursuant to regulations of the Commission in existence at that time.

(11) The Commission further erred in concluding that it had jurisdiction to reinstate and transfer Certificate No. 19552 in 1978, since the order cancelling the certificate in 1964 was a final order of the Commission, over which it had no further jurisdiction.

(12) The Commission erred in concluding that the reinstatement of Certificate No. 19552 in 1978 was a valid exercise of administrative power. The Commission erred because it failed to issue public notice of the request for reinstatement, held no hearing on the application, and its order of reinstatement contains no findings of fact or conclusions of law in support of the reinstatement.

(13) The Commission acted inconsistently in reinstating Roosevelt's authority, as it had refused to consider reinstatement of cancelled authorities of several of the Plaintiffs at earlier times.

Appellant has predicated its appeal on five points of error. Appellant claims that the trial court erred in concluding that:

(1) the Commission does not have jurisdiction to review its final orders which are void or voidable for lack of jurisdiction;

(2) there is no provision in Tex.Rev. Civ.Stat.Ann. art. 911b permitting reinstatement of Specialized Motor Carrier Certificate No. 19552;

(3) the Commission's reinstatement of the certificate was an invalid exercise of administrative power;

(4) the Commission ignored its rules of practice;

(5) the Commission acted inconsistently in reinstating the certificate.

We will first address appellant's points one, two and four since they are dispositive of this appeal and group them for the ease of discussion.

Appellant's primary contention under these points of error is that the Railroad Commission's action in setting aside the November 19, 1964, order canceling Certificate number 19552 was a valid exercise of administrative power since that agency has the " . . . inherent power to review and vacate their final judgments and orders that are void or voidable because of lack of jurisdiction." The Commission contends that Cabluck's reinstatement application is more than a typical application governed by the Railroad Commission's *Motor Transport Regulations* and is instead some hybrid form of direct attack upon the Commission's cancellation order. Such cause of action is permissible, it alleges, because of the voidness of the cancellation order, void due to constructive fraud of an officer of the Commission brought to bear upon Mr. Cabluck in the procurement of the cancellation order.

In support of this premise, appellant cites a number of authorities, principally relying upon *Magnolia Petroleum Co. v. New Process Production Co.*, 129 Tex. 617, 104 S.W.2d 1106 (1937). While it is true that the holding in that case would ostensibly seem to support appellant's allegations, upon a closer analysis it becomes clear that *Magnolia* does not control our disposition of the case. In that case, New Process Production Company filed an application on March 8, 1934, with the Railroad Commission to drill three oil wells on an 8-acre tract as an exception to the Commission's Rule 37. On May 7 the Commission denied the application but on June 29, without motion, notice or hearing, granted the application. Magnolia then filed a statutory appeal from that order. The supreme court held that the May 7 order denying the permit was a final order and the "commission's further jurisdiction thereof . . . could not be invoked except upon motion, notice and hearing, which was not had when the order of June 29, 1934, was entered." The court held that the June 29 order was void, not because the Commission was without potential jurisdiction to enter it but because it was entered without proper motion, notice and hearing. Thereafter, New Process filed a new application with the Commission to drill the wells and after proper notice and hearing, this application was granted and Magnolia again appealed. In upholding the Commission's action, *the supreme court held that where a prior refusal of a permit to drill as an exception to Rule 37 had not been passed upon by the courts, the Commission could, upon proper motion, notice and hearing review its order and grant the application absent a showing of changed circumstances.*

█ As we interpret the *Magnolia* case, its application is limited to its particu-

lar set of circumstances. The power of the Commission to review and set aside its final orders upon notice and hearing is not as expansive as appellant insists. Clearly *Magnolia* is limited to non-appealed cases where the Commission has *refused* a permit to drill as an exception to Rule 37. It has been pointed out that there is a distinction between refusing and granting a permit under Rule 37 and also a distinction between a privilege to use the highways for commercial purposes and a permit to drill for oil on private property. The former involves no vested property interest, whereas the latter does. *Smith v. Wald Transfer and Storage Co.*, 97 S.W.2d 991, 996 (Tex. Civ.App.—Austin 1936, writ dism'd). Additionally, the supreme court felt that the Commission was justified in its action in *Magnolia* because "... the Railroad Commission has, for years, and in hundreds of instances, construed our oil and gas conservation laws (Vernon's Ann.Civ.St. art. 6004 et seq.) as giving it the right to *review orders refusing* well permits, regardless of the question of changed conditions. Vast property rights have become vested by orders entered in such reviewals. An examination of our *conservation statutes* discloses that they do not in any manner directly deal with such question, but are open to construction in regard thereto. Under such a record we think in this instance we should sustain the departmental ruling." *Magnolia, supra* 104 S.W.2d at 1110 (emphasis supplied).

Other cases cited by appellant in support of its contention do not directly address the power of the Commission to set aside its own final orders which appear to be valid on their face. Instead, these cases recognize a court's authority to set aside, by way of collateral attack, orders which are *void* on their face.[2]

Appellant alleges that the cancellation order is void due to fraud on the part of an officer of the Commission. Mr. Soule's letter of July 17, 1963, it contends, constitutes extrinsic fraud which would void the cancellation order making it subject to revocation under the aforementioned authorities. We do not consider Director Soule's action fraudulent. Even assuming, *arguendo*, that his actions could be considered fraudulent, the fraud would be intrinsic rather than extrinsic. Only extrinsic fraud will entitle a complainant to relief from a final judgment. *See Alexander v. Hagedorn*, 148 Tex. 565, 226 S.W.2d 996, 1001–02 (1950) for a lucid discussion of the distinction between extrinsic and intrinsic fraud. Freeman in his treatise Law of Judgments (5th Ed. 1925) has succinctly stated the principle as follows:

> The fraud for which a judgment may be vacated or enjoined in equity must be in the procurement of the judgment .... for judgments are impeachable for those frauds only which are extrinsic to the merits of the case, and by which the court has been imposed upon or misled into a false judgment. *They are not impeachable for frauds relating to the merits between the parties.* All mistakes and errors must be corrected from within by motion for a new trial, or to reopen the judgment, or by appeal. *The fraud must be "in some matter other than the issue in controversy in the action."* (Emphasis supplied.)

Therefore, extrinsic fraud does not include matters which were actually or potentially in issue in the action sought to be overturned. *Raney v. Mack*, 504 S.W.2d 527, 533 (Tex.Civ.App.—Texarkana 1974, no writ). As reflected by his letter of July 24, 1963, Mr. Cabluck disagreed with the director's interpretation of § 1¼ of art. 911b, yet allowed the cancellation order to be entered without contest.[3] He had notice of

---

2. *See e. g., Railroad Commission v. Herrin Transport Co.*, 262 S.W.2d 426 (Tex.Civ.App.—Austin 1953, writ ref'd n. r. e.); *Hurst v. A. R. A. Mfg. Co.*, 555 S.W.2d 141 (Tex.Civ.App.—Fort Worth 1977, no writ); *Bynum v. Davis*, 327 S.W.2d 673 (Tex.Civ.App.—Houston 1959, writ ref'd n. r. e.); *Texas Liquor Control Board v. Cannon*, 147 S.W.2d 927 (Tex.Civ.App.—Fort Worth 1940, no writ); *Westheimer I.S.D. v. Brockette*, 567 S.W.2d 780 (Tex.1978).

3. We note that despite the director's letter in 1963, Mr. Cabluck was able to procure operating papers for 1963–64.

the hearing on the cancellation of his certificate and could have interposed his defenses at that time yet failed to do so. Clearly, the "fraud" defense was a potential issue of which Cabluck was aware at time of entry of the cancellation order and which he could have interposed at that time. Instead, fourteen years later he sought to reinstate the certificate only to sell it one month thereafter when he felt that finality had attached to the reinstatement order.

■ It is manifestly apparent that the cancellation order issued by the Commission in 1964 had become administratively final after a fourteen-year period. In cases such as the one at bar the Commission is without power to review and set aside its own orders after they have become final. Such was the holding of *Sproles Motor Freight Line v. Smith*, 130 S.W.2d 1087, 1088 (Tex. Civ.App.—Austin 1939, writ ref'd), a case involving the same motor carrier statute as here involved. That case was decided subsequent to *Magnolia* and since the supreme court refused a writ therein, it placed its imprimatur thereon. *Hamilton v. Empire Gas & Fuel Co.*, 134 Tex. 377, 383, 110 S.W.2d 561, 565 (1937); *Ohler v. Trinity Portland Cement Co.*, 181 S.W.2d 120, 123 (Tex.Civ.App.—Galveston 1944, no writ). The Austin Court in *Railroad Commission v. McClain*, 356 S.W.2d 330, 333 (Tex.Civ.App.—Austin 1962, no writ) construed art. 911b and reached the same conclusion. As applicable to this proceeding, the Commission's 1964 order was final for all purposes. The Commission did not possess the jurisdiction to reopen that proceeding. Had Cabluck disagreed with the cancellation, he had the clear right to appeal that order as noted in art. 911b, § 12(b).[4] Despite his failure to appeal the Commission's final order, it is obvious that that order possessed all of the ingredients of administrative finality and was not subject to being reopened some fourteen years later.

■ Furthermore, the Commission has promulgated, under its rule-making power, a specific regulation dealing within reinstatement which it ignored in this case. The Texas Railroad Commission *Motor Transport Regulations* § 5.4 (1968) in effect in 1978 when the reinstatement order was issued provided:

(a) Within twenty (20) days after the cancellation of any certificate or permit for failure to file an annual report as required in Section 5.1, the carrier may request reinstatement of such certificate or permit by application accompanied by the annual report.

(b) The failure of any carrier to request reinstatement of a certificate or permit within twenty (20) days after its cancellation for failure to file an annual report *shall render the cancellation order final for all purposes.* The carrier may not thereafter exercise any of the rights formerly conferred by said certificate or permit without making an application for a new certificate or permit in accordance with the rules. (Emphasis supplied.)

Regulations adopted by the Commission have the full force and effect of a statute (See, *B–R Dredging Co. v. Rodriguez*, 564 S.W.2d 693, 695–96 (Tex.1978) and cases cited therein) and as such are subject to the same rules of construction. It is a general principal of statutory construction that the mention of one thing implies the exclusion of another; *expressio unius est exclusio alterius.* 73 Am.Jur.2d *Statutes* § 211 (1974). Since the Commission has adopted an express provision dealing with reinstatement, it is implied that compliance with that regulation is the exclusive method of reinstatement. Therefore, the trial judge correctly concluded that the commission erred in reinstating the certificate as there is no provi-

---

4. (b) The Commission at any time after hearing, had, upon notice to the holder of any certificate or permit and after opportunity given such holder to be heard, may by its order revoke, suspend or amend any certificate or permit issued under the provisions of this Act, where in such hearing the Commission shall find that such certificate or permit holder has discontinued operation or has violated, refused or neglected to observe the Commission's lawful orders, rules, rates or regulations or has violated the terms of said certificate or permit; provided, that the holder of such certificate or permit shall have the right of appeal as provided in this Act.

sion in art. 911b nor any existing rule or regulation permitting reinstatement in such a manner.

■ Appellant contends that the appellees could not attack the Commission's reinstatement of the certificate as their action, as a part of the transfer proceeding, constituted a collateral attack upon a final order of the Commission. A collateral attack is permissible when the body rendering a decision has: "(1) no jurisdiction of the person of a party, or his property, (2) no jurisdiction of the subject matter of the suit, (3) no jurisdiction to enter the particular judgment entered, or (4) no capacity to act as a court." *Ranger County Insurance v. Rogers*, 530 S.W.2d 162 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.). Rules concerning collateral attacks apply equally to quasi-judicial bodies such as the Railroad Commission. *Kirby Lumber Co. v. Adams*, 62 S.W.2d 366, 369–70 (Tex.Civ.App.—Beaumont 1933, no writ). As we have previously noted, the Commission lacked jurisdiction to set aside the 1964 cancellation order since it was a final order binding on the Commission. Thus, the Commission's order reinstating the certificate was a void order, as it was entered outside Commission's jurisdiction and was subject to collateral attack. *Smith v. Wald*, supra at 994; *Texas Liquor Control Board v. Cannon*, 147 S.W.2d 927, 930 (Tex.Civ.App.—Fort Worth 1941, no writ); 2 Tex.Jur.3d, *Administrative Law* § 38 (1979). The face of the reinstatement

order reveals its voidness and a prohibited resort to evidence aliunde was not necessary to determine its voidness. *Id.* The reinstatement order is reproduced in full below.[5] The order itself reveals that the certificate was canceled in 1964, that such order was vacated and the certificate reinstated in 1978. Thus, the impropriety of the Commission's act is reflected on the face of the record.

■ Furthermore, the reinstatement order was subject to attack as a part of the transfer proceeding as a void judgment or order may be questioned in any proceeding whenever a right is asserted thereunder. *Switzer v. Smith*, 300 S.W. 31, 32 (Tex. Comm'n App.1927, judgment adopted).

■ Additionally, it is our opinion that the appellees did have standing to attack the reinstatement order contrary to appellant's assertion. Since these protesting carriers serve the same areas encompassed by the certificate sought to be transferred, they are interested parties, *Brown Express, Inc. v. Railroad Commission*, 415 S.W.2d 394, 396 (Tex.1967) and could complain of the transfer of an invalid certificate. Accordingly, appellant's points of error 1, 2 and 4 are overruled.

By its third point of error appellant contends that the trial court erred in concluding that the Commission ignored its rules of practice. Thereunder, appellant argues

5. RAILROAD COMMISSION OF TEXAS
  TRANSPORTATION DIVISION
  Certificate or
  Permit Number: 19552
  Date Issued: July 3, 1978
  APPLICATION OF JOHNNY CABLUCK DBA ROOSEVELT SERVICE TO REINSTATE SMC CERTIFICATE NO. 19552 WHICH WAS CANCELED ON NOVEMBER 19, 1964, FOR FAILURE TO COMPLY WITH REGISTRATION REQUIREMENTS.
  ORDER REINSTATING CERTIFICATE OR PERMIT
  The Railroad Commission of Texas makes the following findings:
  That this carrier's certificate or permit has previously been canceled for failure to comply with certain Commission requirements; that the carrier has made proper application for reinstatement and paid the reinstatement fee; that the carrier is now in full compliance with

those requirements relating to the payment of vehicle fees, the filing of insurance certificates evidencing insurance of the proper kind and minimum limits, or affidavits in lieu of such certificates.
Accordingly, it is ordered that this application is approved; that the previous Order canceling this certificate or permit is vacated, and the certificate or permit is fully reinstated.
  Railroad Commission of Texas
  /s/  Mack Wallace
  Chairman
  /s/  John Newton
  Commissioner
  /s/  John Poerner
  Commissioner
Attest:
/s/  Elizabeth Marropulis
Secretary
JS/skh

that validity attached to the issuance of the July 3, 1978, Reinstatement order because it complied with the Administrative Procedure Act in publishing notice with the Secretary of State. This argument begs the question of the Commission's jurisdiction and power to reconsider a previously final order. Having disposed of that contention under points 1, 2 and 4 we overrule appellant's third point of error.

In its fifth point of error appellant attacks the trial court's judgment on the grounds that it erred in concluding that the Commission acted inconsistently in reinstating Specialized Motor Carrier Certificate Number 19552. The inconsistency of treatment among other similarly situated wrecker services who had their certificates cancelled and, like Cabluck, sought reinstatement is immaterial to this appeal and is not grounds for reversal. Appellant's fifth point of error is without merit and accordingly is overruled.

The judgment of the trial court is affirmed.