Charles GOEKE, et al., Appellants,

v.

HOUSTON LIGHTING & POWER COMPANY, Appellee.

No. 3–88–053–CV.

Court of Appeals of Texas, Austin.

Nov. 30, 1988.

Rehearing Denied Jan. 11, 1989.

Jeffery L. Hart, J. Bruce Bennett, Cardwell & Hart, Austin, for appellants.

Robert J. Hearon, Jr., Graves, Dougherty, Hearon & Moody, Austin, for appellee.

Before POWERS, GAMMAGE and ABOUSSIE, JJ.

POWERS, Justice.

Houston Lighting & Power Company sued the Public Utility Commission in district court for judicial review of a final order issued by the Commission in a contested case. Public Utility Regulatory Act (PURA), Tex.Rev.Civ.Stat.Ann. art. 1446c, § 69 (Supp.1988); Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat.Ann. art. 6252-13a, § 19 (Supp.1988). Charles Goeke, a party in the administrative proceeding, intervened in the suit.[1] The district court, after hearing, reversed the agency order and remanded the case to the Commission. Goeke, but not the Commission, appeals to this Court for the further judicial review authorized by APTRA § 20. We will affirm the judgment below.

## THE AGENCY PROCEEDING

Houston Lighting & Power Company applied to the Commission for an amendment of the certificate of public convenience and necessity, issued by the agency, under which the company generates, distributes, and sells electric power in a large part of the State. The proposed amendment would authorize the company's construction of a

---

1. The record is altogether silent as to the identity of the intervenors, apart from Goeke, who appeared by a pleading entitled "The Goeke Group's Original Answer and Counterclaim." That pleading recites:

> Come now, Charles Goeke, et al., approximately 700 landowners in Washington, Austin, and Waller Counties, Texas, who have been admitted as parties in this case and are collectively labeled the "Goeke Group," and file this Original Answer and Counterclaim. The record does not reveal what the "Goeke Group" is, nor does it suggest that any other party challenged in the district court the "standing" of Goeke, the "Goeke Group," or any of the other "approximately 700 landowners." The appeal bond filed in the cause names "as principals" "Defendants Goeke Intervenors." We must therefore *assume* we have jurisdiction owing to Goeke's personal appearance in the district court and his perfection of an appeal to this Court. *See Industrial Traffic League v. Railroad Commission,* 633 S.W.2d 821 (Tex.1982); *cf. Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084 (1926); *Public Utility Commission v. J.M. Huber Corp.,* 650 S.W.2d 951 (Tex.App.1983, writ ref'd n.r.e.).

high-voltage transmission line, traversing a path 100 to 150 feet wide and 46 miles in length, across the Texas counties of Harris, Waller, Austin and Washington. Goeke, joined by about 700 other residents of the three counties last named, intervened in the agency proceeding to oppose the proposed amendment in a 1984 hearing that extended intermittently over several months.

At the conclusion of the hearing, Commission employees (a hearings examiner and an administrative-law judge) delivered to the Commissioners an "Examiners' Report" wherein they recommended approval of the company's application, based upon the findings of fact, conclusions of law, and reasoning set forth in the report. Generally speaking, the report determined favorably to the application the *ultimate* finding PURA § 54(b) required the Commission to make before it might amend the company's application: that the amendment "is necessary for the service, accommodation, convenience, or safety of the public." The report also determined favorably to the application those *factors* the Commission was *bound to consider in arriving at* that ultimate finding:

> (1) the adequacy of existing service, (2) the need for additional service, (3) the effect of the granting of a certificate on the recipient of the certificate and on any public utility of the same kind already serving the proximate area, and (4) on such factors as community values, recreational and park areas, historical and aesthetic values, environmental integrity, and the probable improvement of service or lowering of cost to consumers....
>
> PURA § 54(c) (numbering added); *Public Utility Commission v. Texland Elec. Co.*, 701 S.W.2d 261, 267 (Tex.App.1985, writ ref'd n.r.e.).

### THE AGENCY ORDER

Contrary to the recommendation in the "Examiners' Report," the Commission denied the company's application. In the order we now review, the three Commissioners set out differing views and decisions. Commissioners Thomas and Rosson *con-*

*curred* in denying the application on the following grounds:

\*       \*       \*       \*       \*       \*

2. Houston Lighting and Power Company failed to meet its burden of proving that the need for the proposed ... line outweighs the detrimental impact of the proposed route on the factors set forth in [PURA § 54(c)]. Specifically, Houston Lighting and Power Company failed to present sufficient credible evidence to enable the Commission to weigh and make findings regarding the need for the line against the potential negative effects on the Section 54(c) criteria caused by the proposed route, especially in light of the concerns raised by the intervenors.

3. The Company failed to prove the sufficiency of the routing selection methodology which led to the selection of the proposed route in that it failed to convince the Commission that the methodology employed adequately considered alternative routes using existing rights-of-way and/or parallel lines.

\*       \*       \*       \*       \*       \*

Commissioner Thomas determined that the company had established a need for the line. So much is implied in the foregoing quotation from the order; the same is evident in the conclusions of law and findings of underlying fact Commissioner Thomas expressly adopted from the "Examiners' Report."

Commissioner Rosson concurred in denying the company's application and agreed with the "reasons" stated by Commissioner Thomas, *except* she disagreed with him insofar as he had determined that the proposed line was needed. Commissioner Rosson stated expressly her determination that the evidence did *not* show a need for the proposed line. Accordingly, she dissented from Commissioner Thomas's adoption of six specific findings of underlying fact, included in the "Examiners' Report," that suggested a favorable determination of the "need" criterion of PURA § 54(c).

Commissioner Campbell dissented from the order denying the company's application. She gave the following reasons for her dissent: (1) in its previous decision in

the case, the Commission had determined that a need existed for the proposed line and held the issue was not to be further litigated; (2) in denying the company's application, Commissioners Thomas and Rosson had not "found that the proposed route violated any of the criteria enunciated in § 54(c)"; (3) "[t]he sole issue has always been whether [the company] properly considered alternative routes," which is the only ground upon which the two other Commissioners denied the application; and (4) that ground was an impermissible basis for denying the application in light of the holding in *Frost v. Public Utility Commission*, 672 S.W.2d 883 (Tex.App.1984, writ ref'd n.r.e.).[2]

No *two* Commissioners expressly adopted *any* findings of underlying fact recommended in the "Examiners' Report." Commissioner Thomas expressly adopted six. Commissioner Rosson impliedly adopted the same six because they were *not* listed among those from which she specifically dissented on the public-need factor. The six findings of underlying fact so adopted by Commissioner Thomas and Rosson declare, in effect, as follows: (1) the proposed line would reduce "wheeling charges" and "energy losses;" (2) there existed "a general attitude supporting the preservation of the rural landscape and lifestyle and maintaining historic structures and features;" (3) "[n]o recorded ar-

cheological sites are within 100 feet of the proposed route;" (4) "[n]o properties listed on the National Register of Historic Places or as Texas Recorded Historic Landmarks are within 5000 feet of the proposed route;" (5) another electric utility planned to install a transformer at one terminal of the proposed line before the end of 1988; and (6) the proposed line would provide the same electric utility "a 345 kv transmission path to the east, and an alternative path to the eastern part of" its own service area. These appear to *favor* the proposed line, contrary to the two grounds given in the final order for denying the company's application. What, then, was the Commission's intended meaning in the two grounds it gave for its decision?

The central idea in the first ground stated in the Commission's order is that the company failed to provide the agency "sufficient credible evidence to enable the Commission to *weigh and make findings*" on a particular issue deemed essential to granting or denying the application—whether the need for the line outweighed the detrimental impact the proposed route would have on certain of the criteria PURA § 54(c) required the Commission to consider in deciding the case: (1) community values; (2) recreational and park areas; (3) historical and aesthetic values; and (4) environmental integrity.[3]

---

2. The "Examiners' Report" set out 32 findings of underlying fact and recommended their adoption by the Commission. Commissioner Thomas expressly adopted 23, including those that indicated a need for the proposed line. The nine he declined to adopt were those that suggested a finding favorable to the company on the other criteria in PURA § 54(c).

Commissioner Rosson concurred with Commissioner Thomas's adoption of the 23 findings of fact recommended in the "Examiners' Report," *except* that she expressly declined to adopt six that indicated a need for the line.

Commissioner Campbell, owing to the nature of her decision, did not expressly adopt any of the 32 findings of underlying fact contained in the "Examiners' Report."

No Commissioner supplied findings of underlying fact in lieu of or in addition to those contained in the "Examiners' Report," save for the possibility that the Commission's second determination constituted such a finding—a matter discussed in the text of this opinion.

3. These are, of course, the criteria of PURA § 54(c) apart from: (1) "the need for additional service," (2) "the adequacy of existing service," and (3) "the effect" the Commission action would have on the applicant "and on any public utility of the kind already serving the proximate area." The "Examiners' Report" indicates that the latter two criteria were treated as reciprocals of the first ("public need"). Consequently, the favorable determination recommended on the "public need" criterion *included* favorable determinations on the other two criteria. If we understand correctly the "Examiners' Report," this treatment resulted from the nature of the case.

The proposed line was intended to serve as an *internal* connecting link between the company's two substations or termini at either end, the purpose of the connection being, in the words of the report, "to improve the bulk power transmission network connecting the [company's] system to other electric utilities." Thus, the line would directly improve the company's facilities

The burden of the *second* ground stated in the Commission's order is that the company "failed to convince the Commission" that the company's route-selection methodology "adequately considered alternative routes" utilizing existing rights-of-way and parallel lines.

The two determinations are at once alike and distinctly different. They are alike in that both result from the Commission's judgment that the company failed to carry its burden of proof on a point or issue that determined the Commission's final decision in the case. They are different in this respect: the first refers to the company's failure to carry its burden of proof on several of the criteria in PURA § 54(c)—criteria the Commission was bound to consider in deciding the case. The second refers to the company's failure to carry its burden of proof on a factor not mentioned in any statute, but one that was necessary, nevertheless, to establish favorably to the application the ultimate fact of PURA § 54(b) and the criteria the Commission was bound by PURA § 54(c) to consider in arriving at a decision on that ultimate fact.

From the Commission's final order, the company prosecuted a suit for judicial review under the procedures provided in APTRA § 19. Among other things, the company contended in district court that the order should be reversed because the Commission omitted to supply any findings of underlying fact that reasonably supported the two grounds upon which the Commission denied the company's application. APTRA § 16(b).

## THE DISTRICT–COURT JUDGMENT

After hearing, the district court reversed the Commission's final order, holding that APTRA § 16(b) required the agency to supply in its final order the findings of under-

lying fact that supported its negative findings in the two particulars discussed above. Without reaching any of the company's other grounds of attack on the agency order, the district court remanded the case

> to the Commission for entry by the Commission of such order or orders as it deems appropriate, fully supporting such order or orders with findings and conclusions as are required under APTRA section 16(b).

Goeke appeals to this Court on four points of error that we will now consider.

## COMPLIANCE WITH APTRA § 16(b)

■ The text of APTRA § 16(b) (derived almost *verbatim* from § 12 of the Model State Administrative Procedure Act, 14 U.L.A. 419 (1961) (amended 1981)) provides:

> A final decision must include findings of fact and conclusions of law, separately stated. Findings of fact, *if set forth in statutory language*, must be accompanied by *a concise and explicit statement of the underlying facts* supporting the findings....

(emphasis added). The phrase "if set forth in statutory language" fixes the circumstances under which an agency is bound to supply "a concise and explicit statement of the underlying facts"—the agency must supply the accompanying statement in support of any findings of fact the agency has "set forth in statutory language."

■ What then constitutes a "finding of fact set forth in statutory language?" We must look to *Texas Health Facilities Commission v. Charter Medical–Dallas*, 665 S.W.2d 446 (Tex.1984), where the Texas Supreme Court assigned meaning to the expression. The Court stated that the expression refers to "all statutory fact findings that represent the criteria that the legislature has directed the agency to consider in performing its function," whether

---

and indirectly improve a larger grid in which several other electric utilities participated. For this reason, the "Examiners' Report" does not contain a specific recommended finding, either way, on "[t]he adequacy of existing service" or "the effect" the proposed line would have on the company and any other public utility providing electric service in the "proximate area."

The *remaining* criteria, implicit in the PURA § 54(c) reference to "such factors as community values, recreational and park areas, historical and aesthetic values, environmental integrity, and the probable improvement of service or lowering of cost to consumers" were subjects of quite independent and specific findings of underlying fact in the "Examiners' Report."

those criteria take the form of: (1) "a mandatory fact finding set forth in the relevant enabling act;" *or* (2) a factor that a statute requires the agency to "include among its criteria" in deciding the contested case. *Charter Medical,* 665 S.W.2d 446, 451.

The first category refers evidently to *a norm or standard,* an *ultimate fact* prescribed in the relevant statute, that must be determined in a particular way before the agency may take an action authorized by the statute. For example, the Commission may grant a certificate of public convenience and necessity under PURA § 54(b) only if the agency "finds that the certificate is necessary for the service, accommodation, convenience, or safety of the public." The second category refers evidently to any factors that the relevant statute obliges the agency to *consider* in arriving at its decision on a prescribed norm and standard. For example, PURA § 54(c) requires the Commission to consider "[t]he adequacy of existing service, the need for additional service," and so forth in arriving at the agency's decision on the ultimate fact prescribed in PURA § 54(b).

*Charter Medical* holds that "findings of fact" in *either* category "represent the criteria that the legislature has directed the agency to consider in performing its function." *Charter Medical,* 665 S.W.2d at 451. Consequently, the agency must supply "a concise and explicit statement of the underlying facts" that support its "findings of fact" in either category. That is the

apparent meaning of the Supreme Court's opinion in *Charter Medical.*[4] We turn then to apply that meaning to Goeke's contentions on appeal.

▮ It is readily apparent that the Supreme Court's decision in *Charter Medical* required findings of underlying fact to support the Commission's first *apparent* finding—that the company had failed to carry its burden of adducing evidence sufficient to permit the Commission to weigh and make findings on whether the need for the line outweighed the adverse effect the proposed route had on certain of the criteria set out in PURA § 54(c). That plainly *could* be a finding "in statutory language" because it expresses the agency's determination on factors that PURA § 54(c) required the Commission to "include among its criteria" in deciding the contested case. *Charter Medical,* 665 S.W.2d 446, 451. So to hold, however, requires an assumption that the Commission's determination amounted to "a finding of fact" as that expression is used in APTRA § 16(b). Goeke contends it is *not.* Consequently, he reasons, APTRA § 16(b), by its very terms, did not apply to the Commission's first determination so as to require a supporting statement of underlying facts.

Goeke argues that the Commission's first determination is not a "finding of fact" because it expressly declares that the company failed to adduce *sufficient evidence to permit the Commission to make findings of fact* on whether the need for the

---

**4.** In our own decision in the *Charter Medical* case we assigned a much broader meaning to the expression "in statutory language"—that it encompassed *any* finding expressed as a norm or standard such as those supplied in statutes *or agency rules,* and *any other general finding* where it was *necessary* to know the underlying factual determinations that dictated that general finding in order that the parties might intelligently prepare the case for judicial review and the reviewing court might intelligently assess whether the agency acted within its jurisdiction and according to the statutory provisions that governed its actions. This is the interpretation suggested by the drafters of the model act from which APTRA § 16(b) was taken almost *verbatim. Charter Medical Dallas, Inc. v. Texas Health Facilities Commission,* 656 S.W.2d 928, 937–38 (Tex.App.1983), *rev'd,* 665 S.W.2d 446 (Tex.1984); *See* Powers, *Judicial Review of the*

*Findings of Fact Made by Texas Administrative Agencies in Contested Cases,* 16 Tex.Tech.L.Rev. 475, 508 (Tex.1985).

In *Amtel Communications v. P.U.C. of Texas,* 687 S.W.2d 95, 103–08 (Tex.App.1985, no writ), we followed explicitly the views of the Supreme Court of Texas and the meaning it had assigned, in the *Charter Medical* case, to the expression "in statutory language", as well as certain long-standing rules about what constitutes *sufficient* findings of underlying fact when they *are* supplied in support of findings expressed "in statutory language." We nevertheless pointed out the difficulties and anomalies that result from the Supreme Court's interpretation of the expression "in statutory language." We again urge the Supreme Court to reconsider the matter for the reasons we gave in our *Amtel* opinion.

proposed line outweighed its negative impact on the relevant PURA § 54(c) criteria. This is, Goeke contends, a *reason* for the Commission's decision but *not* a "finding of fact." We disagree. Although stated negatively and in terms of the company's failure to carry its burden of proof on the PURA § 54(c) criteria, the Commission's determination constituted, nevertheless, a "finding of fact" on those criteria. *Gerst v. Goldsbury*, 434 S.W.2d 665, 667 (Tex. 1968) (agency determination, "that there is insufficient evidence of a public need" for proposed savings and loan association, constituted "negative finding" of the ultimate fact of public need under licensing provisions of governing statute). We hold accordingly. The terms of APTRA § 16(b) applied to the Commission's first determination and required the agency to supply underlying facts in support of its determination on the relevant criteria of PURA § 54(c). *Charter Medical*, 665 S.W.2d 446, 451.

Goeke contends alternatively that the Commission's final order rests *exclusively* upon a *non* -statutory ground—the ground reflected in the agency's second determination that "[t]he company failed to prove the sufficiency of [its] routing selection methodology" because the company "failed to convince the Commission" that its methodology allowed for an adequate consideration of alternative routes utilizing existing rights-of-way and parallel lines. Because no relevant statute required that finding or required the Commission to consider such "methodology," the Commission's second determination is not a finding expressed "in statutory language" under the limited scope assigned those words in the *Charter Medical* opinion. Consequently, according to Goeke, APTRA § 16(b) did not require the Commission to supply in its final order a statement of the underlying facts in support of the agency's second determination. We disagree with Goeke's theory.

It is of course true that no relevant statute requires the Commission to "consider" route-selection methodology in deciding whether to issue or amend a certificate of public convenience and necessity.

Consequently, the *Charter Medical* holding did not require the Commission to supply an accompanying statement of underlying facts in support of the agency's second determination. This is true notwithstanding that the second determination is as general as it can be. We disagree, however, with Goeke's *premise* that the Commission's final order rests *exclusively* upon this non-statutory ground. That may be the Commission's reasoning, but such reasoning is not reflected on the face of the agency's final order and we must judge the order by what it says and not some other basis. Two Commissioners (Thomas and Campbell) determined that a need for the proposed line had been established. The obvious purpose of the Commission's first determination was to deny the import that finding would ordinarily have under PURA § 54(c)—it was rejected by Commissioners Thomas and Rosson based on a due consideration and weighing of that public-need determination *against the other criteria* mandated by the same statute. For that reason, we cannot hold that the Commission's first determination is mere surplusage—a necessary prerequisite to Goeke's theory that the Commission's final order rests *exclusively* upon its second determination. The first and second determinations appear unquestionably to be *interdependent*, the second finding *final expression and legal effect* in the first. In other words, the second determination represents an attempted finding of *underlying* fact.

Goeke contends finally that the Commission's second determination—its negative finding on the company's route-selection methodology—*constitutes* the agency's "statement of underlying facts" given in explanation of the Commission's first finding "in statutory language." We agree. Consequently APTRA § 16(b) was satisfied, Goeke reasons, and the trial court erred in holding to the contrary. We disagree with this conclusion.

In its *Charter Medical* opinion, the Supreme Court assigned meaning to the expression "in statutory language," as that expression is used in APTRA § 16(b), but the Court also reaffirmed several long-standing rules about what constitutes *suf-*

*ficient* findings of underlying fact when they *are* supplied by an agency under that statute. The rules are given at page 451 of the *Charter Medical* opinion:

(1) The findings of underlying fact must actually be formulated and stated in the final order for they "may not be presumed from findings of a conclusional nature," *Morgan Drive Away, Inc. v. Railroad Commission,* 498 S.W.2d 147, 152 (Tex. 1973);

(2) To be "valid," the findings of underlying fact must be "clear and specific," *Gage v. Railroad Commission,* 582 S.W.2d 410, 414 (Tex.1979);

(3) The findings of underlying fact may not be supplied in the form of "[a] mere conclusion or a recital of evidence," for these are "inadequate," *Thompson v. Railroad Commission,* 240 S.W.2d 759, 761–62 (Tex.1951); and

(4) The logical force of the findings of underlying fact must "be such that the reviewing court can fairly and reasonably say that the underlying findings support the statutorily required criteria," *Railroad Commission v. Entex, Inc.,* 599 S.W.2d 292, 298 (Tex.1980) and *Railroad Commission v. Graford Oil Corp.,* 557 S.W.2d 946, 950 (Tex.1977).

The Commission's second determination does not constitute a valid or sufficient finding of underlying fact under these long-standing rules. It is a "mere conclusion." It is not "clear and specific" as indicated by the variety of meanings possible to be inferred from the words "sufficiency," "methodology," and "adequately." This is especially true in light of the Commission's first determination, for it is nothing more than a naked conclusion by the agency on the PURA § 54(c) criteria. These criteria are themselves quite broad and unspecific. We refer to such terms as "community values," "historical and aesthetic values," and "environmental integrity." These imply extremely important and even essential factors, but they require at the same time meaningful interpretation and application, by the agency, that is not supplied in the present record in any way that lends some degree of clarity and specificity to either of the Commission's two determinations or both considered together. We cannot, for the foregoing reasons, "fairly and reasonably say that the" Commission's second determination supports the "the statutorily required criteria" implicit in the agency's first determination. *Charter Medical,* 665 S.W.2d at 451. We hold accordingly.

We believe, for the foregoing reasons, that the district court did not err in reversing the Commission's final order on the ground that it omitted the underlying facts required by APTRA § 16(b).

Goeke argues that the Supreme Court's recent decision in *State Banking Board v. Allied Bank,* 748 S.W.2d 447 (Tex.1988) requires a different interpretation of APTRA § 16(b) and a reversal of the district-court judgment in the present case. We disagree.

■■■ In reversing the judgment of the Court of Appeals, the Supreme Court wrote as follows in *Allied Bank:*

The Board's order in this case is twenty four pages long. Eighteen pages [of the final order] are devoted to the underlying facts, *in the form of evidence and testimony,* which the Board relied upon to support its five ultimate findings [on the statutory criteria for granting new-bank charters]. The Board's final order clearly satisfies the purposes behind § 16(b). . . .

748 S.W.2d at 449 (emphasis added). The emphasized expression apparently obliterates any distinction between "facts" and "findings" on the one hand and "evidence" on the other. This is a distinct departure from the Court's *previous* interpretation of APTRA § 16(b) which required *findings* of underlying fact and emphatically *rejected* mere recitals of the evidence.[5] That need

5. A careful reader will observe that APTRA § 16(b) does *not expressly* require that *findings* of underlying fact be made to support findings of fact stated "in statutory language." Instead, the statute requires that such findings "be accompanied by a concise and explicit *statement* of the *underlying facts* supporting the findings [expressed in statutory language]." In its *Allied*

not concern us here, however, for *Allied Bank* does *not* imply that a reviewing court must look *behind* the final order to the mass of raw evidence contained in the statement of facts compiled in the agency proceeding by a reporter. *Even when* the underlying facts *are* supplied "in the form of evidence and testimony," they must be stated *in the order* or *incorporated therein* by reference. That is our understanding, at any rate, of the *Allied Bank* opinion. We have no such order in the present case.

■ Goeke argues that it was harmless error for the Commission to omit from its final order any statement of underlying fact; consequently the company's "substantial rights" were not prejudiced and the court below was powerless to reverse the agency order. APTRA § 19(e). The substance of the argument is that the company has not shown any prejudice resulting from the omission. We reject Goeke's argument, believing it obvious that the company and a reviewing court cannot know the basis of the Commissioners' decision owing to the uncertainty and generality inherent in such expressions as "sufficient credible evidence," "detrimental impact,"

and "concerns raised by the intervenors." These cryptic expressions *conceal;* they *do not inform* a party, a reviewing court, or anyone else.[6]

The district court properly reversed the Commission's final order for want of compliance with APTRA § 16(b). We therefore overrule Goeke's point of error.

## THE GENERAL REMAND AND DENIAL OF DISCOVERY

■ Goeke contends in a second point of error that the district court erred in ordering a general remand in lieu of a remand limited to giving the Commission an opportunity to formulate and include in an amended final order the findings of underlying fact required by APTRA § 16(b). He argues that the agency's omission to supply such findings in the first instance was only a "technical error"; and, he contends, the disparity in the intervenors' financial resources as compared to those of the company imposes a hardship on the former if the case be re-opened as the general remand permits but does not require. We disagree with Goeke's "tech-

---

*Bank* opinion, the Supreme Court rather pointedly declared that APTRA § 16(b) is "clearly" satisfied when the "statement of the underlying facts" is supplied "in the form of evidence and testimony." This is a distinct departure from ordinary legal usage and the Court's own previous interpretations of APTRA § 16(b).

The word "finding" imports, in ordinary legal usage, a tribunal's *ascertainment* of a fact *from* the evidence; it does *not* mean the evidence itself. *See e.g.,* APTRA § 13(h) ("[f]indings of fact must be based exclusively on the evidence and on matters officially noticed."). The word "finding" implies that the tribunal has settled upon and fixed where the truth lies, on a given proposition, from among the conflicting parts of the evidence pertaining to that proposition. Such a "finding" establishes the "fact" for purposes of adjudication and review.

Consistent with such ordinary usage, the Supreme Court implied in its *Charter Medical* opinion that the "statement of the underlying facts" demanded by APTRA § 16(b) meant a statement of the underlying facts *found* by the agency in reaching its decision. The Court stated that the "[u]nderlying *findings* of fact must be such that the reviewing court can fairly and reasonably say that the underlying *findings* support the statutorily required criteria." 665

S.W.2d at 451 (emphasis supplied). In the same passage, the court reaffirmed two other *longstanding* rules about what constitutes *sufficient* "findings" of underlying fact: (1) "[a] mere *conclusion* or a *recital of evidence* is inadequate;" and (2) "[t]he required underlying facts may not be presumed from findings of a conclusional nature." *Id.*

When the Court in *Allied Bank* states that APTRA § 16(b) is "clearly" satisfied by "underlying facts" supplied "in the form of evidence and testimony," it rather starkly raises the question whether these venerable rules still apply, and whether the quoted passages from *Charter Medical* itself continue to apply, for a statement of the "evidence and testimony" can amount to no more than a "recital of evidence" and the "required underlying facts" can only be presumed from the "findings of a conclusional nature." For the reasons given in the text of our opinion, we need not pursue this interesting aspect of the *Allied Bank* opinion.

6. In our opinion in *Allied Bank Marble Falls v. Banking Board,* 739 S.W.2d 73, 79 (Tex.App. 1987), *rev'd,* 748 S.W.2d 447 (Tex.1988), we pointed out that the ultimate purpose of APTRA § 16(b) was to *secure the rule of law,* in agency adjudications, in several different ways discussed in that opinion.

nical error" assessment.[7] His second argument is one properly addressed to the Commission if his assertion is true and if it has any relevance at all.

In a third point of error, Goeke advances a contention that also bears upon the general remand ordered by the district court, although his contention is raised in a separate point of error. He complains in his third point of error that the trial court erred in denying him leave to present *in district court* additional evidence on the issue of whether there existed a need for the company's proposed line. The district court did not err.

■■■■ The district-court proceeding in the present case was not a trial *de novo*, but a suit to review the Commission's final order "under the substantial evidence rule." APTRA § 19(e). The review was "confined to the agency record," that is to say the record of proceedings compiled in the agency, with two exceptions: (1) the district court might "receive evidence of procedural irregularities alleged to have occurred before the agency, but which are not reflected in the record," APTRA § 19(d)(3); and (2) Goeke was entitled to apply for leave of court to present additional evidence *in the agency*, under conditions determined by the court, which the court might grant "if it is satisfied that the additional evidence is material and there were good reasons for the failure to present it in the proceeding before the agency...." APTRA § 19(d)(2). Goeke's evidence cannot fall within the first exception because it relates not to procedural irregularities but to the substantive issue of whether there existed a need for the proposed line. His

evidence cannot fall within the second exception because, the record reveals, he wished to introduce the evidence in district court but gave no reason for his failure to present the evidence in the agency proceeding. We hold accordingly, noting that Goeke is free to convince the Commission, on remand, that the evidence should be reopened and his evidence received.

■■■■ Nevertheless, Goeke apparently argues in this Court that we must reverse the district-court judgment, and require the *district court* to receive Goeke's evidence (even though it is not otherwise admissible under APTRA) because the Commission is powerless to "re-open" the evidence under the decisions in *Public Utility Commission v. Brazos Electric Power Cooperative, Inc.,* 723 S.W.2d 171, 173 (Tex.App. 1986, writ ref'd n.r.e.) and *Railroad Commission v. McKnight,* 619 S.W.2d 255, 260 (Tex.App.1981, no writ). If we understand Goeke's argument, he views these decisions as engrafting upon APTRA § 19 a *common-law* exception to the general rule of that statute that judicial review of the agency's decision is "confined to the agency record" in cases like the present, with only the two exceptions that the statute itself allows for the taking of additional evidence.

We reject Goeke's theory for several reasons. We need only state the first—that Goeke argues from a false premise in his statement that the agency may *not* lawfully receive additional evidence even though the general remand of the district court would allow it to do so.

---

7. There can be no good faith contention that the Legislature lacked the power to control the decision-making procedures employed by the agencies in their exercise of the powers of discretion delegated to them by the Legislature. One such power may be, of course, the important power of deciding "contested cases"—controversies between individuals or between individuals and the State, in which the agencies determine "the legal rights, duties, or privileges" of persons in matters of property or liberty. APTRA § 3(2). For these reasons, it may hardly be contended that a violation of APTRA § 16(b) is a mere "technical error." The requirements of that statute have the very purpose of securing the

rule of law in agency adjudications, as discussed in footnote 5, *supra.*

"It is procedure that spells much of the difference between rule by law and rule by whim or caprice." *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 179, 71 S.Ct. 624, 652, 95 L.Ed. 817 (1951) (Douglas, J., concurring). *See also Harborlite Corporation v. I.C.C.,* 613 F.2d 1088, 1092 (D.C.Cir.1979); *Saginaw Broadcasting Co. v. F.C.C.,* 96 F.2d 554, 561 (D.C.Cir.), *cert. denied,* 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391 (1938); Model State Administrative Procedure Act § 12 commissioner's comment, 14 U.L.A. 419 (1961) (amended 1981).

In APTRA § 19(e) the Legislature authorized the reviewing court, in cases like the present, to "affirm the decision of the agency in whole or in part and [to] reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced" by an error of law falling within any of the six categories listed thereafter. In authorizing the reviewing court to remand the case to the agency "for further proceedings," the Legislature did not intend that the remand be a sterile remedy. The Legislature intended rather that the agency be given a meaningful opportunity to exercise its delegated powers to correct any error of law upon which the reviewing court reversed the agency decision and to erase the prejudicial effects of that error. *Southwestern Bell Telephone Co. v. Public Utility Commission*, 615 S.W.2d 947, 954 (Tex.App.), *writ ref'd n.r.e. per curiam*, 622 S.W.2d 82 (Tex. 1981).

The foregoing applies to suits *governed* by APTRA § 19(e), as Goeke's suit is, where a dissatisfied party in the agency proceeding sues for judicial review of the agency's final order in a *direct* attack upon it following the procedures established for such suits in APTRA § 19(e). The decisions in the *Brazos Electric* and *McKnight* cases, cited by Goeke, do not deal with suits of that character. They deal instead with suits brought as *collateral* attacks upon agency orders that had become final at an earlier time (eighteen months in the one case and fourteen years in the other), without any dissatisfied party suing for judicial review, where intervening rights and interests had arisen in reliance on the unassailed orders. Re-opening and reconsideration of the agency order, in such cases, raises quite difference considerations than those raised under the remand authorized in APTRA § 19(e). *See generally, Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129 (Tex.App.1986, writ ref'd n.r.e.).

We hold the district court did not err in ordering a general remand and in overruling Goeke's motion for leave to present additional evidence in that court. Accordingly, we overrule Goeke's second and third points of error.

## "SUBSTANTIAL EVIDENCE" ATTACK ON THE AGENCY ORDER

The trial court expressly declined to decide Goeke's complaint that the Commission's final decision should be affirmed by the district court because the agency's determination, by two Commissioners (Thomas and Campbell), that there existed a need for the proposed line, was not supported by substantial evidence.

We overrule the point of error on two grounds. Firstly, having prevailed in the agency by the Commission's decision, Goeke did not prosecute a suit for judicial review of that decision within the time allowed by APTRA § 19(a) and did not contend, in consequence, that he was prejudiced by the agency decision as that statute requires. We are aware of no authority by which Goeke is permitted in these circumstances to attack the Commission's finding of ultimate fact, on the issue of need, as opposed to the decision the agency reached on the basis of that finding. *See Champlin Exploration, Inc. v. Railroad Commission*, 627 S.W.2d 250 (Tex.App.1982, writ ref'd n.r.e.). Secondly, we are bound to respect the agency's autonomy, in its exercise of its delegated powers, and judge the lawfulness of its "order on the basis upon which it purports to rest and not upon what we might imagine is an adequate or more proper basis." *Professional Mobile Home Transport v. Railroad Commission*, 733 S.W.2d 892, 904 (Tex.App.1987, writ ref'd n.r.e.). We hold accordingly.

## THE COMPANY'S CROSS POINTS

In three cross points, the company contends the district court erred in remanding the case to the Commission without considering the company's claims that the agency erred: (1) when it rejected the company's application on a ground or grounds outside those enumerated in PURA § 54(c); (2) when substantial evidence did not exist in the record that reasonably supported the Commission's finding that the company's methodology did not allow for adequate

consideration of alternative routes; and (3) when the statutory requirements of PURA § 54(c) were established as a matter of law in the company's favor.

We hold the district court properly deferred consideration of the company's contentions. The matters raised by the company may, in the agency's expert view, bear on the criteria of PURA § 54(c) in ways that a reviewing court cannot imagine; or the Commission may wish to hear and consider additional evidence and argument on those matters before formulating the findings of underlying fact we and the district court have required of the agency. In these circumstances, a reviewing court should not foreclose the agency from an exercise of its undoubted jurisdiction. We therefore overrule the company's cross-points.

Finding no reversible error, we affirm the district-court judgment.