# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00027-CV

**Anadarko E&P Company, L.P. f/k/a RME Petroleum Company;
Larry T. Long, Sammy Adamson and L. Allan Long, in their Capacities
as Trustees for the Lawrence Allan Long Trust, Charles Edward Long Trust,
Larry Thomas Long Trust and John Stephen Long Trust, Appellants**

**v.**

**Railroad Commission of Texas; Anadarko E&P Company, L.P.
f/k/a RME Petroleum Company, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
## NO. GN204461, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This administrative appeal involves a challenge to a final order issued by the Texas Railroad Commission granting a well-spacing exception under Statewide Rule 37[1] to appellant Anadarko E&P Company, L.P. f/k/a RME Petroleum Company. On appeal, Anadarko raises several procedural challenges to the Commission's final order, and appellants Larry T. Long, Sammy Adamson, and L. Allan Long, in their capacities as trustees for the Lawrence Allan Long Trust, Charles Edward Long Trust, Larry Thomas Long Trust, and John Stephen Long Trust (collectively the "Long Trusts"), argue that the Commission's order was not supported by substantial

---

[1] 16 Tex. Admin. Code § 3.37 (2008) (Tex. R.R. Comm'n, Statewide Spacing Rule) ("Rule 37"). Because the relevant portions of Rule 37 have not changed during the pendency of this appeal, we cite to the current rule for convenience unless otherwise noted.

evidence. Because we find no merit in Anadarko's procedural challenges and we conclude the Commission's final order was supported by substantial evidence, we affirm the district court's judgment affirming the Commission's order.

## BACKGROUND

The Commission issued a final order granting a permit for the Barksdale Well No. 8 on September 12, 2002.[2] Commission staff had previously granted a permit for Well No. 8 to Anadarko's predecessor, which was challenged by the Long Trusts for lack of notice. In its final order, the Commission determined that the original permit, granted administratively by Commission staff without protest, was void *ab initio* because the Long Trusts failed to receive notice of the permit application in accordance with Commission rules. Upon proper notice and hearing, the Commission granted an exception to the spacing requirements under Rule 37 to prevent waste and issued a new permit for Well No. 8.

### *The Original Permit*

Anadarko's predecessor UPRC applied to the Commission for a permit to drill Well No. 8 in 1997. As part of its application, UPRC requested a Rule 37 exception and submitted a conditional waiver of objection from Sonat Exploration. The plat attached to UPRC's application erroneously identified the offset leaseholder and operator as Sonat Exploration, instead of the Long Trusts. Given the conditional nature of the waiver executed by Sonat Exploration, the

---

[2] The Commission issued a nunc pro tunc order on November 13, 2002, correcting two clerical errors in its previous order.

2

Commission sent notice of UPRC's Rule 37 application to Sonat Exploration on January 9, 1998. The Commission received no objection to UPRC's application within the requisite ten-day time period and, therefore, Commission staff granted UPRC an administrative Rule 37 exception as allowed under subsection (h)(2)(A). *See* 16 Tex. Admin. Code § 3.37(h)(2)(A). In the absence of an objection, the Commission did not hold a hearing or receive evidence regarding UPRC's application. UPRC completed the well in June 1998 after receiving approval of its Rule 37 application from Commission staff.

### *The Long Trusts' Complaint*

On May 23, 2001, the Long Trusts filed a complaint with the Commission on the ground that they failed to receive notice of UPRC's application for a Rule 37 exception for Well No. 8. The Commission set the matter for hearing and conducted an administrative hearing on the complaint. During the hearing, the Commission also considered whether the well was entitled to a Rule 37 exception.

Because no one disputed that the Long Trusts were entitled to receive notice under Rule 37 and UPRC had failed to give notice of its application for a Rule 37 exception to the Long Trusts, a major focus of the administrative hearing was whether the original permit was void or voidable. Anadarko argued that the permit was merely voidable because evidence was submitted that the Long Trusts had actual knowledge of the proposed location for Well No. 8 before it was drilled. The Long Trusts are a working interest owner in Well No. 8 and, in this capacity, UPRC sent the Long Trusts an approval for expenditure ("AFE") with well location plats showing that the proposed location for Well No. 8 would require a Rule 37 exception. The Long Trusts signed the

3

AFE in March 1998. Thus, Anadarko argued that the Long Trusts' signing of the AFE demonstrated actual knowledge of UPRC's application for a Rule 37 exception and, therefore, cured any defect in notice. However, like the plat submitted with UPRC's application to the Commission, the plat sent to the Long Trusts failed to identify the Long Trusts as the offset operator to the west of the portion of the unit where Well No. 8 was drilled.

The hearings examiners issued a proposal for decision recommending that the original permit be declared voidable, not void, because the Long Trusts had actual knowledge of the proposed well location and did not file a timely complaint with the Commission. The hearings examiners further recommended that the Commission grant a Rule 37 exception for Well No. 8 on the basis that the well is necessary to prevent waste.

The Commission considered the proposal for decision in a public conference on September 12, 2002, and rejected the hearings examiners' recommendation in part. Contrary to the recommendation, the Commission voted to declare the permit void *ab initio* because the Long Trusts did not receive notice of UPRC's application as required by the plain language of Rule 37. The Commission adopted the examiners' recommendation to grant a Rule 37 exception for Well No. 8 to prevent waste. Those commissioners who were present signed a final order.

Although representatives of the Long Trusts were present at the Commission's public conference on September 12, 2002, they were not given a copy of the Commission's signed order. The record reflects that later that day Commission staff faxed a courtesy copy of the order to the attorneys for Anadarko and the Long Trusts. The next day, September 13, 2002, the Commission mailed a cover letter and a copy of the final order to the attorneys of record in the administrative

4

proceeding. The attorney for the Long Trusts received the cover letter and final order on Monday, September 16, 2002.

*Motions for Rehearing*

Anadarko filed its motion for rehearing on October 2, 2002. That same day, after receiving Anadarko's motion for rehearing, the Long Trusts filed a letter with the Commission requesting that the Commission revise its final order and deny the Rule 37 exception. Two days later, on October 4, 2002, the Long Trusts filed a formal document specifically labeled as its motion for rehearing. Like the letter filed on October 2nd, the October 4th motion asked the Commission to reconsider its final order and deny the Rule 37 exception. Relying upon the date it mailed the copies of the final order, the Commission considered both Anadarko's motion for rehearing and the Long Trusts' motion for rehearing filed on October 4th to be timely filed.

*Nunc Pro Tunc Order*

On November 13, 2002, the Commission denied the parties' motions for rehearing and issued a nunc pro tunc order correcting two clerical errors in its previous order. The Commission corrected the year of the hearing from "2002" to "2001" and, based on the evidence in the record, the Commission corrected the year that the Long Trusts learned about Well No. 8 from "1988" to "1998." Following the issuance of this nunc pro tunc order, Anadarko filed a second motion for rehearing. The hearings examiners advised the parties by letter that the nunc pro tunc order corrected only clerical errors and that the Commission no longer had jurisdiction to act on the matter. The Commission therefore took no action on Anadarko's second motion for rehearing.

5

*Appeals in District Court*

Anadarko and the Long Trusts filed separate appeals from the Commission's final order issued September 12, 2002. The district court signed an agreed order consolidating the two appeals. Thereafter, the district court entered final judgment affirming the Commission's final order.[3] Anadarko and the Long Trusts appeal the district court's final judgment affirming the Commission's final order.

## DISCUSSION

On appeal, Anadarko raises nine issues. In general, Anadarko faults the Commission for declaring the original permit void, not voidable, and for considering what it views as an untimely motion for rehearing filed by the Long Trusts. For their part, the Long Trusts challenge the merits of the Commission's order arguing that the Commission applied the wrong legal standard in granting a Rule 37 exception and that the Commission's order was not supported by substantial evidence.

*Standard of Review*

We review the Commission's final order under the substantial evidence rule. *See* Tex. Gov't Code Ann. § 2001.174 (West 2008). Under the substantial evidence rule, we give significant deference to the agency in its field of expertise. *Railroad Comm'n v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995); *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). We presume that the agency's order is valid and that

---

[3] The district court also signed an order denying Anadarko's plea to the jurisdiction and, thereafter, entered findings of fact and conclusions of law regarding its denial of the plea. The parties do not appeal from the district court's denial of Anadarko's plea to the jurisdiction.

6

its findings, inferences, conclusions, and decisions are supported by substantial evidence. *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994); *Charter Med.*, 665 S.W.2d at 452. The complaining party has the burden to overcome this presumption. *City of El Paso*, 883 S.W.2d at 185; *Hammack v. Public Util. Comm'n*, 131 S.W.3d 713, 725 (Tex. App.—Austin 2004, pet. denied).

In conducting a substantial evidence review, we may not substitute our judgment for that of the agency on the weight of the evidence on questions committed to the agency's discretion. Tex. Gov't Code Ann. § 2001.174; *Charter Med.*, 665 S.W.2d at 452; *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd.*, 36 S.W.3d 597, 602 (Tex. App.—Austin 2000, pet. denied). The issue for the reviewing court is not whether we believe the agency's decision was correct, but whether the record demonstrates some reasonable basis for the agency's action. *Charter Med.*, 665 S.W.2d at 452; *Central Power & Light Co. v. Public Util. Comm'n*, 36 S.W.3d 547, 561 (Tex. App.—Austin 2000, pet. denied). We will uphold the agency's order unless the agency's decision is not reasonably supported by substantial evidence, in violation of a constitutional or statutory provision, in excess of the agency's statutory authority, made through unlawful procedure, affected by other error of law, arbitrary or capricious, or characterized by an abuse of discretion. *See* Tex. Gov't Code Ann. § 2001.174(2)(A)-(F).

Certain issues raised by the parties involve questions of statutory construction, which we review *de novo*. *See, e.g.*, *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003) (appellate courts review matters of statutory construction *de novo*); *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994) (questions of law are always subject to *de novo* review). When construing

7

a statute, our primary goal is to determine and give effect to the legislature's intent. *City of San Antonio*, 111 S.W.3d at 25. To determine legislative intent, we look to the statute as a whole, as opposed to isolated provisions. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We begin with the plain language of the statute at issue and apply its common meaning. *City of San Antonio*, 111 S.W.3d at 25. Where the statutory text is unambiguous, we adopt a construction supported by the statute's plain language, unless that construction would lead to an absurd result. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). We give serious consideration to an agency's interpretation of the statutes it is charged with enforcing, so long as that interpretation is reasonable and consistent with the statutory language. *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993); *Steering Comms. for the Cities Served by TXU Elec. v. PUC*, 42 S.W.3d 296, 300 (Tex. App.—Austin 2001, no pet.). This is particularly true when the statute involves a complex subject matter. *Steering Comms. for Cities*, 42 S.W.3d at 300. Courts, however, "do not defer to administrative interpretation in regard to questions which do not lie within administrative expertise, or deal with a nontechnical question of law." *Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.).

Additionally, certain issues raised by the parties challenge the Commission's authority. The Texas Railroad Commission "is a creature of the Legislature and has no inherent authority." *Public Util. Comm'n v. GTE-SW Corp.*, 901 S.W.2d 401, 407 (Tex. 1995). Like other state administrative agencies, the Commission "has only those powers that the Legislature expressly confers upon it" and "any implied powers that are necessary to carry out the express responsibilities given to it by the Legislature." *Public Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 316

8

(Tex. 2001). It is not enough that the power claimed by the Commission be reasonably useful to the Commission in discharging its duties; the power must be either expressly conferred or necessarily implied by statute. The agency may not "exercise what is effectively a new power, or a power contradictory to the statute, on the theory that such a power is expedient for administrative purposes." *Id.*

***Statutory Scheme and Rule 37***

We provide a brief overview of the relevant statutory scheme to give context to the parties' arguments. The legislature has given the Commission exclusive jurisdiction to regulate oil and gas wells in Texas. *See* Tex. Nat. Res. Code Ann. § 81.051(a)(2) (West 2001).[4] Pursuant to this authority, the Commission has adopted various rules regarding the drilling and spacing of oil and gas wells in Texas, including Rule 37—the Statewide Spacing Rule. *See generally* 16 Tex. Admin. Code §§ 3.1-.106 (2008). In relevant part, Rule 37 provides:

> No well for oil, gas, or geothermal resource shall hereafter be drilled nearer than 1,200 feet to any well completed in or drilling to the same horizon on the same tract or farm, and no well shall be drilled nearer than 467 feet to any property line, lease line, or subdivision line; provided the commission in order to prevent waste or to prevent the confiscation of property, may grant exceptions to permit drilling within shorter distances.

16 Tex. Admin. Code § 3.37. Rule 37 further provides that when an exception to the spacing requirements is desired, the applicant shall file an application with the proper fees and attachments

---

[4] Section 81.051 of the natural resources code provides in relevant part: "The commission has jurisdiction over all . . . oil and gas wells in Texas." Tex. Nat. Res. Code Ann. § 81.051(a)(2) (West 2001).

as prescribed by the rule. *Id.* § 3.37(a)(2). The application must include a plat that conforms to the requirements in subsection (c) of Rule 37. *Id.* § 3.37(c). In addition, the applicant must file a list of the mailing addresses of all affected persons as identified in subsection (a)(2)(A) of the rule. *Id.* § 3.37(a)(2)(A). The purpose of this list is to allow the Commission to give notice of the application to all affected persons. *See* Tex. Nat. Res. Code Ann. § 85.205 (West 2001) (requiring the Commission to provide notice and an opportunity for hearing). Rule 37 also requires a person acquainted with the facts pertinent to the application to certify that all facts stated in the application are true and within the knowledge of that person. 16 Tex. Admin. Code § 3.37(a)(2).

Commission staff may grant an administrative approval of an application for exception if notice of at least ten days has been given and no protest has been filed or written waivers of objection are received from all persons to whom notice would be given under the rule. *Id.* § 3.37(h)(2). If a protest is filed, the Commission will hold a hearing on the application for exception. *See* Tex. Nat. Res. Code Ann. § 85.205; 16 Tex. Admin. Code § 3.37(a)(3).

### *Anadarko's Claims*

#### *Challenges to Commission Authority*

We turn first to Anadarko's claims that the Commission erred in declaring the initial permit void. In its second, third, fourth, and fifth issues, Anadarko challenges the Commission's authority to reconsider the issuance of the original permit on the grounds that: the proceeding was an impermissible collateral attack on a final Commission order; the Commission lacks authority to review the order granting the original permit; and, even if the Commission could review the final order granting the permit, the Commission erred in failing to consider and give effect to the

10

equitable defenses of laches, estoppel, waiver, and ratification, and, therefore, the Commission erred in declaring the permit void and not voidable.

We reject Anadarko's argument that the Commission proceeding was an impermissible collateral attack on a final Commission order. Both the Texas Supreme Court and this Court have recognized that the Commission has statutory authority in certain circumstances to reconsider its prior orders in oil and gas matters. *See Magnolia Petroleum Co. v. New Process Prod. Co.*, 104 S.W.2d 1106, 1110-11 (Tex. 1937); *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 139 & n.5 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (discussing power of railroad commission to reconsider prior orders and citing *Magnolia Petroleum Co. v. New Process Prod. Co.*, *supra*; *Railroad Comm'n v. Aluminum Co. of Am. ("ALCOA")*, 380 S.W.2d 599, 602 (Tex. 1964) (holding commission may modify proration orders "where conditions have changed materially, new and unforeseen problems arise or mistakes are discovered.")). In *Magnolia Petroleum Co.*, the supreme court considered whether the Commission had authority to reconsider its previous denial of a Rule 37 exception and held that, although the Commission was without authority to review or set aside judicial decrees, the Commission had authority to reconsider its own orders upon a showing of changed circumstances. *Magnolia Petroleum Co.*, 104 S.W.2d at 1110. In *Railroad Commission v. ALCOA*, the supreme court confirmed that "the Commission's power to regulate oil and gas production in the interest of conservation and protection of correlative rights is a continuing one and its orders are subject to change or modification *where . . . mistakes are discovered*." 380 S.W.2d at 602 (emphasis added). In *Sexton v. Mount Olivet Cemetery Association*, this Court discussed the Commission's authority to reconsider its prior orders in light of the supreme court's holdings in

11

*Magnolia Petroleum Co.*, *supra* and *ALCOA*, *supra*, and concluded that the statutes administered by the railroad commission granted the Commission the power to set aside its previous orders in oil and gas matters. 720 S.W.2d at 139 & n.5. This Court explained:

> In each of these decisions, the statute involved (Tex. Rev. Civ. Stat. Ann. art. 6049c, §§ 5, 7, now codified as Tex. Nat. Res. Code §§ 85.049-.053, 85.058-.064 (1978)) almost amounted to an express delegation to the Commission of a power to reconsider its previous orders in oil and gas matters, for it directed the Commission, on complaint or on its own "initiative," to inquire "*from time to time*" into any aspect of the oil and gas business to determine, after hearing, whether "waste" was occurring or was imminent and to issue whatever "rule, regulation or order" may be "reasonably required to correct, prevent or lessen such waste."

*Id.*

The statutes in question have not changed. Section 81.051 of the natural resources code grants the Commission exclusive jurisdiction over oil and gas wells in Texas. Tex. Nat. Res. Code Ann. § 81.051. Section 85.201 authorizes the Commission to make and enforce rules and orders for the conservation of oil and gas, the prevention of waste of oil and gas, and, correspondingly, the protection of correlative rights. *Id.* § 85.201 (West 2001); *see Sexton*, 720 S.W.2d at 139 n.5. In addition, section 85.058 gives the Commission authority to inquire "whether the oil and gas conservation laws of this state or the rules and orders of the [C]ommission promulgated under those laws are being violated." *Id.* § 85.058 (West 2001). And section 81.053 gives the Commission express authority to "hear and determine complaints." *Id.* § 81.053 (West 2001). Furthermore, section 85.205 serves the constitutional and legislative objective of protecting correlative rights by requiring that no Commission rule or order may be adopted without "notice or hearing as provided by law." *Id.* § 85.205.

The Commission proceeding at issue involved a hearing and determination of the Long Trusts' complaint that the administrative approval granted by Commission staff was granted in violation of the Commission's rules regarding oil and gas conservation, the prevention of waste, and protection of correlative rights—in particular that the Long Trusts were deprived of "notice and hearing as provided by law" under Rule 37. Based on the precedents of both the supreme court and this Court interpreting the Commission's statutory authority, we conclude that the Commission, in the absence of judicial review of its prior order, has statutory authority to reconsider its prior administrative order granting the original Rule 37 exception to UPRC.[5] *See Magnolia Petroleum Co.*, 104 S.W.2d at 1110; *ALCOA*, 380 S.W.2d at 602; *Sexton*, 720 S.W.2d at 139 & n.5. We further conclude that the proceeding was not an impermissible collateral attack on a final Commission order and that the Commission acted within its statutory authority to consider the Long Trusts' complaint.[6] We overrule Anadarko's second and third issues.

---

[5] We emphasize that our holding today does not stand for the general proposition that an administrative agency has the inherent authority to reconsider its prior adjudicative orders. *See Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 139 & n.5 (Tex. App.—Austin 1986, writ ref'd n.r.e.). Whether an agency possesses such authority must be considered in light of the statute that vests the agency with administrative power. *Id.* at 138 (agencies have no inherent authority).

[6] To the extent Anadarko relies on *Sproles Motor Freight Line v. Smith*, 130 S.W.2d 1087 (Tex. Civ. App.—Austin 1939, writ ref'd), and *Public Utility Commission v. Brazos Electric Power Cooperative*, 723 S.W.2d 171 (Tex. App.—Austin 1986, writ ref'd n.r.e.), in support of its claim that the Commission lacks authority to review its prior orders, we find those cases distinguishable. Unlike the Commission's authority in this case, *Sproles* did not involve the Commission's authority in oil and gas matters, but instead concerned the granting of an application for a certificate of convenience and necessity to operate motor trucks as a common carrier on Texas highways. 130 S.W.2d at 1087. Similarly, *Brazos Electric Power Cooperative* involved an entirely different agency—namely, the public utility commission, not the railroad commission—and thus an entirely different statute. 723 S.W.2d at 173.

13

In its fourth issue, Anadarko complains that the Commission erred in declaring the original permit void rather than merely voidable. Anadarko is concerned with what it terms the retroactive effect of the Commission's permit revocation—i.e., that its production under the original permit was illegal from its inception. Anadarko frames this argument in jurisdictional terms. According to Anadarko, because the original permit was valid on its face and the lack of notice to the Long Trusts was not a jurisdictional defect, the permit was merely "voidable"—i.e., its revocation was effective prospectively—not "void." We find these arguments to be without merit.

We first observe that in *Magnolia Petroleum Co.*, *supra*, the supreme court held that a Commission order entered without proper motion, notice, and hearing was "void." 104 S.W.2d at 1106. In that case, New Process Production Company filed an application to drill three additional wells on a mineral lease in Gregg County, Texas. *Id.* at 1107. The Commission, after notice of the application was duly given, denied the request. *Id.* Thereafter, New Process again consulted the Commission about drilling the additional wells. *Id.* The company presented the matter to the Commission "without any motion, additional application, or notices," and the Commission, without hearing, entered a second order granting the application. *Id.* Because the Commission's second order was entered "without any motion, additional application, or notices," the supreme court cancelled, annulled, and declared void the Commission's second order granting the application. *Id.* In *Railroad Commission v. McKnight*, the supreme court confirmed its holding in *Magnolia Petroleum Co.* "that the [second] order was void, not because the [C]ommisson was without potential jurisdiction to enter it but because it was entered without proper motion, notice and hearing." 619 S.W.2d 255, 258 (Tex. 1981).

14

As previously noted, section 85.205 expressly limits the Commission's authority by prohibiting it from adopting a rule or permit "except after notice and hearing as provided by law." Tex. Nat. Res. Code Ann. § 85.205. There is no dispute that the Long Trusts were entitled to notice under Rule 37. Rule 37 provides that "[n]o well drilled in violation of this section without special permit obtained, issued, or granted *in the manner prescribed in said section . . . shall be permitted to produce.*" 16 Tex. Admin. Code § 3.37(e) (emphasis added). In the absence of proper notice, we conclude that the Commission did not err in declaring the original permit "void"—i.e., the production was illegal from its inception—rather than "voidable." *See Magnolia Petroleum Co.*, 104 S.W.2d at 1107; *McKnight*, 619 S.W.2d at 258; *see also Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999) (courts defer to an agency's interpretation of its own rules unless plainly erroneous or inconsistent with the regulation or underlying statute). We overrule Anadarko's fourth issue.

We similarly reject Anadarko's complaint that the Commission erred in failing to consider and give effect to the equitable defenses of laches, estoppel, waiver, and ratification.[7] The record is clear that the Commission considered and rejected the equitable arguments raised by Anadarko. The Commission specifically rejected Anadarko's defense of laches when it refused to

---

[7] Anadarko relies on the statements of a commissioner at the conference in which the Commission considered the proposal for decision in asserting that the Commission failed to consider Anadarko's equitable defenses. However, it is immaterial what the commissioners may have said in the process of arriving at a decision. *See City of Frisco v. Texas Water Rights Comm'n*, 579 S.W.2d 66, 72 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.). Statements of a commissioner made during the deliberative process in an open meeting are irrelevant to the judicial determination whether the agency order is reasonably sustained by appropriate findings and conclusions that have support in the evidence. *Id.*

15

adopt the hearings examiners' recommendation and proposal for decision on this issue. Likewise, the Commission rejected the remaining arguments asserted by Anadarko when it considered and denied Anadarko's motion for rehearing. Because the record demonstrates that the Commission considered and rejected the equitable defenses raised by Anadarko, we consider only whether the Commission erred in failing to give effect to these defenses.

This Court has recognized that an administrative agency makes fundamental policy choices when it adopts rules under the APA rulemaking procedures. *Texas Ass'n of Long Distance Tel Co. (Texaltel) v. Public Util. Comm'n*, 798 S.W.2d 875, 886 (Tex. App.—Austin 1990, writ denied). Such policy choices necessarily involve the balancing of competing interests and an evaluation of the equities of the situation. *Id.* The Commission's adoption of notice requirements thus represents a fundamental policy choice that proper notice is required before the Commission or its staff may grant a Rule 37 exception. *See* 16 Tex. Admin. Code § 3.37(a)(2)(A) (requiring notice), (h)(2) (prohibiting administrative grant of Rule 37 exception unless notice has been given and no protest has been filed or written waivers of objection are received). Furthermore, as previously noted, this notice requirement has both constitutional and statutory underpinnings.

We cannot conclude that the Commission erred with regard to the weight it afforded UPRC's "equitable" factors as against the interests in strict enforcement of Rule 37's notice requirements. *See Rodriguez*, 997 S.W.2d at 255 (agency is bound to follow its own rules and procedures); *Public Util. Comm'n v. Gulf States Util. Co.*, 809 S.W.2d 201, 207 (Tex. 1991) (same). We overrule Anadarko's fifth issue.

16

*Notice*

In its first and sixth issues, Anadarko argues that the Long Trusts' actual knowledge of the well location and the Commission's subsequent hearing and finding that the permit is necessary to prevent waste satisfied the notice requirements in Rule 37 or, alternatively, cured any defect in notice. We disagree.

Having adopted the notice requirements in Rule 37, the Commission was entitled to insist upon strict compliance with its rule. *See Rodriguez*, 997 S.W.2d at 255 (agency is bound to follow its rules); *Gulf States Utils. Co.*, 809 S.W.2d at 207 (same); *see also F.A. Gillespie & Sons Co. v. Railroad Comm'n*, 161 S.W.2d 159, 163 (Tex. 1942) ("An operator's rights must be acquired in compliance with the provisions of a valid rule of the Commission; and none can be acquired in violation of it."). As previously suggested, that the Commission requires strict compliance with the notice requirements of Rule 37 is consistent with the statutory scheme and structure of the rule. The natural resources code prohibits the Commission from adopting an order or rule pertaining to the conservation or waste prevention of oil and gas "except after notice and hearing as provided by law." Tex. Nat. Res. Code Ann. § 85.205. The plain language of Rule 37 places the burden of correctly identifying affected persons squarely upon the applicant. 16 Tex. Admin. Code § 3.37(a)(2). It is therefore incumbent upon the applicant for a Rule 37 exception to ensure that the correct parties have been identified so that the Commission may provide proper notice to those parties. *Id.*

We agree with Anadarko, and the Commission found, that the Long Trusts had actual knowledge of the proposed location of Well No. 8. But actual knowledge of the proposed location does not equate to actual knowledge of UPRC's application for a Rule 37 exception. Nor does it

17

equate to the notice that the Long Trusts were entitled to receive in order to allow them an opportunity to protest that application.

The AFE submitted to the Long Trusts identified the Long Trusts as a 25% working interest owner in the proposed well. But the plat attached to the AFE failed to identify the Long Trusts as the affected offset operator of the adjacent tract. Even if we assume, based solely on the proposed location of the well as identified in the plat, that the Long Trusts knew a Rule 37 exception would be required, we cannot assume the Long Trusts knew they were the offset operator and were therefore entitled to protest such an exception.

While we agree with Anadarko that the Long Trusts had actual knowledge of the proposed location of Well No. 8, we do not agree that such knowledge satisfied the notice requirements of Rule 37. The notice requirements of Rule 37 are designed to protect the correlative rights of those parties affected by a Rule 37 exception. The mere knowledge of a well's proposed location without more does not protect correlative rights because it does not give notice of any potential adverse effects to such rights. Therefore, we conclude that the Long Trusts' actual knowledge of the proposed location of Well No. 8 neither satisfies the requirements of Rule 37 nor cures any defect in notice. We likewise conclude that the Commission's subsequent hearing on the Long Trusts' complaint cannot cure the defects in notice regarding the original permit application. *See, e.g.*, *In re Adoption of Armstrong*, 394 S.W.2d 552, 555-56 (Tex. App.—El Paso 1965) (on remand, adopting opinion of U.S. Supreme Court in *Armstrong v. Manzo*, 380 U.S. 545 (1965) (subsequent hearing does not cure due process defect regarding lack of notice of original proceeding)). We overrule Anadarko's first and sixth issues.

18

*Final Order and Motions for Rehearing*

In its three remaining issues, Anadarko challenges the district court's determinations that the November 13, 2002, nunc pro tunc order of the Commission was not a final order and brings two challenges to the Long Trusts' motions for rehearing. We reject these claims.

The record demonstrates that the Commission issued its final order on September 12, 2002. Thereafter, on November 13, 2002, the Commission issued an order nunc pro tunc to correct two clerical errors in its previous order. The Commission's order nunc pro tunc corrected the hearing date from "December 12, 13, and 14, 2002" to "December 12, 13, and 14, 2001" and also corrected another date from "March 1988" to "March 1998."

In its seventh issue, Anadarko contends that the district court erred in holding that the November 13, 2002, order nunc pro tunc was not a final order. The essence of Anadarko's argument is that the Long Trusts were required to file a second motion for rehearing from the November 13, 2002, order nunc pro tunc in order to preserve their complaints on appeal, and the Long Trusts failed to do so. Therefore, according to Anadarko, the district court should have dismissed the Long Trusts' administrative appeal for lack of jurisdiction. We disagree.

In support of this argument, Anadarko relies primarily upon section 2001.145 of the Administrative Procedure Act ("APA"), which requires a timely motion for rehearing as a prerequisite to an appeal in a contested case. *See* Tex. Gov't Code Ann. § 2001.145(a) (West 2008). Both the Texas Supreme Court and this Court have previously rejected this argument. In *Consumers Water, Inc. v. Public Utility Commission*, the supreme court held that a second motion for rehearing was not required when the agency's subsequent order denied the parties' motions for rehearing,

19

but amended the previous order to add the finding of "imminent peril" required under subsection 2001.144(a)(3) of the APA. 741 S.W.2d 348, 349 (Tex. 1987). Significant to our analysis here, the supreme court reversed this Court's judgment and holding that a second motion for rehearing was required. *See id.* (reversing *Consumers Water, Inc. v. Public Util. Comm'n*, 707 S.W.2d 186 (Tex. App.—Austin 1986)).

The supreme court has since confirmed that reviewing courts should use a "more pragmatic and flexible approach" to evaluate the finality of an agency's order. *Texas-New Mexico Power Co. v. Texas Indus. Energy Consumers*, 806 S.W.2d 230, 232 (Tex. 1991). Under this approach, courts must recognize the need to minimize disruption of the administrative process and to afford regulated parties and consumers with an opportunity for timely judicial review of actions that affect them. *Id.* The supreme court explained that "there is no single rule dispositive of all questions of finality, and reviewing courts should consider the statutory and constitutional context in which the agency operates, and should treat as final a decision 'which is definitive, promulgated in a formal manner and one with which the agency expects compliance.'" *Id.* (quoting 5 J. Stein, G. Mitchell & B. Mezines, Administrative Law 48-10 (1988)).

Applying the supreme court's "more pragmatic and flexible approach," this Court, in *Office of Public Utility Counsel v. Public Utility Commission*, held that a second motion for rehearing was not required when the subsequent orders of the administrative agency did not alter the original order with respect to the first motion for rehearing. 843 S.W.2d 718, 726 (Tex. App.—Austin 1992, writ denied). In other words, where the agency's subsequent order did

20

not grant the motion for rehearing or otherwise change the previous order in response to a motion for rehearing, this Court determined that there was no need for a second motion for rehearing. *Id.*

To the extent Anadarko relies on this Court's decision in *Southern Union Gas Co. v. Railroad Commission*, 690 S.W.2d 946, 948 (Tex. App.—Austin 1985, writ ref'd n.r.e.), we find that case distinguishable. In that case, the Commission granted the gas company's motion for rehearing for the limited purpose of changing the effective date to implement new rates and, thereby, modified its earlier order. The Commission denied the motion for rehearing in all other respects. The gas company did not file a second motion for rehearing. *Id.* at 947. This Court determined that Southern Union Gas was required to file a second motion for rehearing after the Commission modified its earlier order. *Id.* at 948. This Court rejected the argument that a second motion was unnecessary because the modification of the earlier order was not substantial. *Id.* at 948-49; *see Ross v. Texas Catastrophe Prop. Ins. Ass'n*, 770 S.W.2d 641, 644 (Tex. App.—Austin 1989, no writ) (to draw distinction between order that agency changes substantially in response to motion for rehearing and one that changes only in minor fashion is not the law of this state).

In this case, unlike *Southern Union Gas*, the Commission denied the motions for rehearing. Like *Office of Public Utility Counsel*, there was no change in the Commission's order with respect to the Long Trusts' motion for rehearing. Therefore, we conclude that the Long Trusts were not required to file a second motion for rehearing from the Commission's November 13, 2002, order nunc pro tunc.[8] We overrule Anadarko's seventh issue.

---

[8] We observe that this distinction is consistent with other cases cited by Anadarko. *See Railroad Comm'n v. Exxon Corp.*, 640 S.W.2d 343, 346 (Tex. App.—Beaumont 1982, writ ref'd n.r.e.); *Mahon v. Vandygriff*, 578 S.W.2d 144, 146-47 (Tex. Civ. App.—Austin 1979, writ ref'd

21

In its eighth and ninth issues, Anadarko challenges the sufficiency and timeliness of the Long Trusts' motions for rehearing. Anadarko first argues that the Long Trusts' letter filed October 2, 2002, was not a proper motion for rehearing and, therefore, preserved nothing for review. Second, Anadarko argues that the Long Trusts' motion for rehearing filed October 4, 2002, was untimely because the APA requires a motion for rehearing to be filed within twenty days after a party receives notice of the Commission's final order and the Long Trusts received a copy of the Commission's final order on the day it was signed, September 12, 2002, thereby making the applicable twenty-day deadline October 2nd and rendering the October 4th motion untimely.

Because we conclude the Long Trusts' October 4th motion for rehearing was timely filed, we do not consider Anadarko's argument regarding the sufficiency of the October 2nd letter filed by the Long Trusts.

As previously noted, section 2001.145 of the APA requires a party to file a timely motion for rehearing as a prerequisite for judicial review. Tex. Gov't Code Ann. § 2001.145(a). Section 2001.146 specifies that a party must file its motion for rehearing not later than the twentieth day after the date on which the party or the party's attorney of record is notified as required under section 2001.142. *Id.* § 2001.146(a) (West 2008); *Temple Indep. Sch. Dist. v. English*, 896 S.W.2d 167, 169 (Tex. 1995). Under subsection 2001.142(a), a party shall be

n.r.e.). In *Exxon Corp.*, the agency granted the motion for rehearing and the reviewing court held that a second motion for rehearing was thus required. 640 S.W.2d at 345-46. In *Mahon*, the initial agency order was contingent upon future events and, therefore, was not a final order. 578 S.W.2d at 147. The agency issued two subsequent orders, and the appellant did not file a motion for rehearing regarding either of these orders. *Id.* at 146. On review, this Court affirmed the trial court's dismissal for failure to file a motion for rehearing from the agency's final order. *Id.* at 147-48.

notified either personally or by first class mail of any decision or order. Tex. Gov't Code Ann. § 2001.142(a) (West 2008). The APA thus provides two methods by which a party or the party's attorney can be notified of an agency's decision: personal notice or notice by first class mail. *Id.*

In this case, the record reflects that the Long Trusts did not receive a copy of the Commission's order at the public conference on September 12, 2002. Although Commission staff faxed a courtesy copy of the order to the Long Trusts' later that day, this faxed copy does not satisfy the APA requirement of personal notice or notice by first class mail. *See* Tex. Gov't Code Ann. § 2001.142(a). The record reflects that Commission staff mailed a copy of the order to the Long Trusts' attorney of record the next day—September 13, 2002—and that the Long Trusts' attorney of record received this mailed notice on September 16, 2002. It is this mailed notice that satisfies the requirements in section 2001.142(a) of the APA. *See id.* Therefore, the deadline for filing a motion for rehearing was twenty days from September 16, 2002, or October 6, 2002. Tex. Gov't Code Ann. § 2001.146(a). Because the Long Trusts' motion for rehearing was filed October 4th, we conclude the motion was timely, and we overrule Anadarko's ninth issue. We now turn to the merits of the Long Trusts' claims.

***The Long Trusts' Claims***

In two issues, the Long Trusts contend that the Commission erred in granting a Rule 37 exception to Anadarko's predecessor in interest UPRC. First, the Long Trusts argue that the Commission applied the wrong legal standard and, second, the Long Trusts argue that the Commission's order was not supported by substantial evidence.

23

Anadarko and the Commission assert that the Long Trusts have failed to preserve their complaint that the Commission applied the wrong legal standard by failing to raise this issue in their motion for rehearing. Alternatively, Anadarko and the Commission argue that even if we conclude the issue has been raised, the Long Trusts' complaint is more properly considered in the context of whether the Commission's order is supported by substantial evidence because the essence of the Long Trusts' argument is that the Commission applied the wrong law to the facts of this case. Having reviewed the Long Trusts' October 4th motion for rehearing, we disagree with Anadarko and the Commission that the Long Trusts have failed to preserve this issue. However, we agree that the essence of the Long Trusts' complaint is that the Commission applied the wrong law to the facts of this case and that this argument is more properly considered in the context of whether the Commission's order is supported by substantial evidence, which we address more fully below.

In their second issue, the Long Trusts argue that the Commission's order granting a Rule 37 exception is not supported by substantial evidence. Essentially, the Long Trusts argue that Anadarko failed to establish that Well No. 8 was necessary to prevent waste. For the reasons discussed below, we reject the Long Trusts' argument.

Rule 37 allows the Commission to grant an exception to the spacing requirements thereunder on two grounds: to prevent waste and to prevent the confiscation of property. 16 Tex. Admin. Code § 3.37(a)(3). The Commission's final order granted UPRC a Rule 37 exception on the ground that Well No. 8 was necessary to prevent waste.

The supreme court has defined the term "waste," as used in Rule 37, to mean "the ultimate loss of oil." *Gulf Land Co. v. Atlantic Ritchfield Co.*, 131 S.W.2d 73, 80 (Tex. 1939).

24

Under this definition, the court explained that a Rule 37 exception to prevent waste may be justified if a *substantial* amount of oil or gas that otherwise would ultimately be lost will be saved by the drilling of a well. *Id.* (emphasis added). To obtain a Rule 37 exception to prevent waste, it must be shown that, because of unusual conditions in the localized area, closer spacing of wells is necessary to recover the hydrocarbons. *Wrather v. Humble Oil & Ref. Co.*, 214 S.W.2d 112, 117 (Tex. 1948). Thus, to obtain a Rule 37 exception, UPRC was required to show that unusual conditions—i.e., different from conditions in adjacent parts of the field—existed under the tract for which the exception was sought; that as a result of these unusual conditions, hydrocarbons cannot be recovered by any existing well or by additional wells drilled at "regular" locations;[9] and that the volume of otherwise unrecoverable hydrocarbons is substantial.

The record demonstrates that the Barksdale Estate Gas Unit on which Well No. 8 is located is an irregularly shaped unit with a panhandle section similar to the shape of the State of Texas or Oklahoma. The well is located in the panhandle section of the unit equidistant from east and west lines. Although regular locations exist on the unit, no regular locations exist in the panhandle section. The undisputed evidence showed that there was a rapid depositional environment in the area of Well No. 8 as contrasted to the remaining field as a whole. The evidence showed that this rapid depositional environment would impact the heterogeneity, permeability, and porosity in the area of Well No. 8. The Commission determined that the lease geometry of the panhandle section coupled with the impact of the rapid depositional environment constituted an unusual

---

[9] A "regular" location is a well location that does not require a Rule 37 exception because it meets the requirements of the Commission's statewide spacing rules or the spacing requirements in "special field rules" applicable only to a particular field.

condition that precluded the reservoir from being adequately drained by wells at regular locations. In addition, the evidence showed that Well No. 8 will recover between 224 and 1,056 million cubic feet of gas that would not otherwise be recoverable by wells at regular locations. The Commission thus determined that Well No. 8 would recover a substantial amount of hydrocarbons that would not otherwise be recoverable by wells at regular locations.

The Long Trusts challenge the Commission's order on the grounds that there was conflicting evidence presented on the issue of "unusual conditions" at the location of Well No. 8 and that the Commission failed to require UPRC to demonstrate unusual conditions at the site of the proposed well. To the extent the Long Trusts argue that certain evidence in the record showed a lack of unusual conditions, the Long Trusts ignore the established premise that the Commission was entitled to accept or reject in whole or in part the testimony of the various witnesses who testified. *See City of Corpus Christi v. Public Util. Comm'n*, 188 S.W.3d 681, 695 (Tex. App.—Austin 2005, pet. denied); *Railroad Comm'n v. Lone Star Gas Co.*, 618 S.W.2d 121, 125 (Tex. Civ. App.—Austin 1981, no writ); *City of Frisco v. Texas Water Rights Comm'n*, 579 S.W.2d 66, 69 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.). Likewise, the Commission was the sole judge of the weight to be accorded the witnesses' testimony. *Central Power & Light Co.*, 36 S.W.3d at 561.

The Commission's order expressly states in finding-of-fact ten that the "undisputed geologic evidence shows that there was a rapid depositional environment in the area of the Barksdale No. 8 as contrasted to the field as a whole." The Commission found that this "rapid depositional environment" in conjunction with the lease geometry constituted an unusual condition justifying a Rule 37 exception. The record thus demonstrates that the Commission's decision to grant a Rule 37

26

exception was based in part on the unusual condition of a "rapid depositional environment" in the localized area of the proposed well. We conclude that there is a reasonable basis in the record before us to support the Commission's finding of unusual conditions at the location of Well No. 8. *See Charter Med.*, 665 S.W.2d at 452; *Central Power & Light Co.*, 36 S.W.3d at 561.

The Long Trusts further argue that the Commission's order was not supported by substantial evidence because the Commission's consideration of "lease geometry" was improper. In considering whether to grant a Rule 37 exception to prevent waste, the supreme court has held that the Commission need not confine its analysis to the sole question as to whether the well will save oil that otherwise would be lost. *Gulf Land Co.*, 131 S.W.2d at 85. Rather, "the Commission should be left reasonably free to exercise its sound judgment and discretion," keeping in mind that the Commission's duty is to conserve oil and gas above ground as well as below. *Id.* Such discretion would reasonably include the ability to decide which factors to consider in determining whether to grant a Rule 37 exception to prevent waste, as well as how much weight to give each factor. *Id.*; *see also Halbouty v. Railroad Comm'n*, 357 S.W.2d 364, 374 (Tex. 1962) (finding Commission, in exercising its regulatory discretion, may give greater or less weight to relevant factors in setting production limitations); *Texas Bldg. Owners & Managers Ass'n v. Public Util. Comm'n*, 110 S.W.3d 524, 536 (Tex. App.—Austin 2003, pet. denied) (when exercising delegated regulatory authority, agency has discretion to consider factors legislature may not have foreseen and to decide relevancy and weight of those factors in each circumstance).

That the Commission may consider factors beyond mere geology in determining whether requirements necessary to grant a Rule 37 exception to prevent waste have been met was

more recently confirmed by the supreme court in *Exxon Corp. v. Railroad Commission*, 571 S.W.2d 497 (Tex. 1978). In that case, the court upheld the Commission's determination that an existing well bore, as well as economic infeasibility of drilling at regular locations, established unusual conditions justifying a Rule 37 exception to prevent waste. *Id.* at 501. Citing evidence that the oil to be produced from the proposed well could not be produced from any other existing well, the court affirmed the Commission's determination that an exception was necessary to prevent waste. *Id.*

The Commission's consideration of economic infeasibility in *Exxon Corp.* is no different than the Commission's consideration of lease geometry in this case. We therefore reject the Long Trusts' claim that the Commission was forbidden from considering lease geometry when determining whether a Rule 37 exception should have been granted to prevent waste.

The Long Trusts also argue that the Commission's order was not supported by substantial evidence because the Commission failed to make a finding that no well at a regular location would drain the hydrocarbons to be recovered by Well No. 8. Contrary to this assertion, the Commission expressly determined in finding of fact 11 that lease geometry coupled with the impact of the depositional environment would preclude the panhandle section of the Barksdale Unit from being drained "by wells at regular locations." The record demonstrated that the formation into which Well No. 8 was completed was a tight gas formation, which means that gas is not easily produced from the reservoir without stimulation. In addition, the evidence submitted by UPRC included a well

28

reservoir simulation study showing that Well No. 8 would recover hydrocarbons that would not be recovered by a well at a regular location.[10] We therefore reject the Long Trusts' contention.

Finally, the Long Trusts contend that the Commission erred in considering volumes of gas that had been illegally produced since 1998 when deciding whether to grant a Rule 37 exception to prevent waste in 2001. The Commission determined that the proposed well would recover between 224 and 1,056 million cubic feet of gas that would otherwise be unrecoverable by wells at regular locations. The Long Trusts agree that the lower number of 224 million cubic feet of gas is based on record evidence regarding 2001 production forward, while the higher number was based on record evidence regarding 1998 production forward. As we have previously noted, the Commission has broad discretion in determining which factors to consider when granting a Rule 37 exception and how much weight to give each factor. *See Halbouty*, 357 S.W.2d at 374; *Gulf Land Co.*, 131 S.W.2d at 85. Because the record demonstrates the Commission considered that from 2001 forward the proposed well would recover 224 million cubic feet of gas that would otherwise be unrecoverable, we find no merit in the Long Trusts' argument, and we conclude that there is a

---

[10] To the extent that Long Trusts complain that the Commission allowed UPRC to omit "selected regular locations" from its analysis, the Long Trusts point to a second well that UPRC could have drilled at a regular location on another adjacent tract. In considering whether to grant a Rule 37 exception applicable to *this* tract, the Commission in its discretion was entitled to accept or reject the testimony and evidence in whole or in part, *see City of Corpus Christi v. Public Util. Comm'n*, 188 S.W.3d 681, 695 (Tex. App.—Austin 2005, pet. denied); *Railroad Comm'n v. Lone Star Gas Co.*, 618 S.W.2d 121, 125 (Tex. Civ. App.—Austin 1981, no writ), and we may not substitute our judgment for that of the Commission on questions committed to the Commission's discretion. *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984); *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd.*, 36 S.W.3d 597, 602 (Tex. App.—Austin 2000, pet. denied).

reasonable basis in the record to support the Commission's conclusion that a Rule 37 exception was necessary in 2001 to prevent waste.

We therefore reject the Long Trusts' claim that the Commission's order is not supported by substantial evidence, and we overrule the Long Trusts' second issue.

## CONCLUSION

Having overruled the parties' issues on appeal, we affirm the judgment of the district court affirming the Commission's final order.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear;
    Chief Justice Law Not Participating

Affirmed

Filed:   January 7, 2009